## CITY OF DALLAS v. DALLAS CONSOL. ELECTRIC ST. RY. CO.

(Court of Civil Appeals of Texas. Dallas. June 14, 1913. . Rehearing Denied June 28, 1913.)

1. MUNICIPAL CORPORATIONS (§ 108*)—INITIATIVE ORDINANCE—WHEN EFFECTIVE.

Under the initiative provisions of the charter of the city of Dallas that, if the majority of the qualified electors voting on a proposed ordinance should vote in favor thereof, it should thereupon become a valid ordinance of the city, an initiative ordinance, directing the mayor to draft an ordinance for the enforcement "of this expression of the people's will. Be it ordained by the board of commissioners of the city of Dallas, acting under the initiative provisions of the charter"—if valid, was effective when the board of commissioners ascertained and declared the result of the election without further action on its part.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 108.*]

2. MUNICIPAL CORPORATIONS (§ 108*)—INITIATIVE ORDINANCE—VALIDITY.

Under the charter of the city of Dallas, containing a general initiative provision as to the passage of ordinances and not mentioning the regulation of rates and the services of public utility corporations, but elsewhere delegating such duty to the board of commissioners and providing for the making of rules after a hearing to persons affected thereby the board of commissioners was the only tribunal having power to regulate public utility corporations, so that an ordinance adopted at a popular election, purporting to regulate the fares charged by street railway companies, was invalid, since it did not afford the fair hearing prescribed by the charter.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 108.*]

3. INJUNCTION (§ 85*)—SUBJECTS OF PROTECTION—VOID ORDINANCE.

. Although an ordinance purporting to regulate the fares of street railroad companies, and to have been adopted under the initiative provisions of a charter, was void, and although there might not be any attempt to enforce it, yet as it stood on the minutes of the city as a law, menacing the property of a street railway company and subjecting it to numerous complaints and suits, to interruption of its service, to depreciation of its securities, to disturbance in its transfer arrangements, and to interference with its employés in the performance of their duties, the company was without adequate remedy at law, and was entitled to enjoin its enforcement.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action for injunction by Dallas Consolidated Electric Street Railway Company against the City of Dallas. Temporary injunction granted, and the city of Dallas appeals. Affirmed.

See, also, 150 S. W. 1198.

J. J. Collins and Lee Richardson, both of Dallas, for appellant. Baker, Botts, Parker & Garwood, of Houston, and Spence, Knight, Baker & Harris, of Dallas, for appellee.

RAINEY, C. J. The statement of the nature and result of the case as stated by appellant we find correct, and is as follows:.

"On the 23rd day of November, 1912, a judgment was entered by the Fourteenth judicial district court of Dallas county, Tex., upon the application of appellee, Dallas Consolidated Electric Street Railway Company, granting a temporary injunction against the city of Dallas and its mayor and commissioners, and the city secretary, commanding them to abstain and refrain from asserting the validity of, or enforcing or attempting to enforce, a certain initiative ordinance adopted at a general election of the city on the 2d day of April, 1912, which said ordinance reads as follows:

" 'An ordinance requiring the sale of not less than seven street car tickets for 25 cents; requiring street railways to charge not more than 3 cents as fare unless the passenger is provided with a seat within two blocks of the point where said passenger enters the car: requiring all street cars to stop when properly signaled; making it unlawful to eject persons who tender these rates of fare, and directing the mayor to draft an ordinance for the enforcement of this expression of the people's will.

" 'Be it ordained by the board of commissioners of the city of Dallas, acting under the initiative provisions of the charter:

" '(a) That all persons, firms, corporations, lessees, assignees or receivers operating street railways in the city of Dallas, are hereby required to have on sale with each conductor on every car, tickets each good for one ride with transfer privilege, at the rate of not less than seven tickets for 25 cents.

" '(b) That it shall not be lawful on street railways in the city of Dallas, to collect more than 3 cents as a fare, unless the passenger is provided with a seat within two blocks of the point where said passenger entered the car.

" '(c) That all street cars in the city of Dallas, when signalled in the usual way, shall stop for passengers, unless another car of the same line is following within two blocks.

" '(d) That it shall not be lawful for any public officer or any private person to eject from a street car in the city of Dallas, or to refuse to allow passage on same to any person who has tendered to the conductor the fare based on the hereby established rates.

" '(e) That the mayor is hereby instructed to draft and recommend to the city commis-

sion, within thirty days, an ordinance for the enforcement with appropriate penalties of this expression of the people's will.'

"The petition of appellee sets forth the ordinance and, in detail, the grounds upon which it asks for a temporary injunction against the city of Dallas and its officers. In response to the petition of appellee, the appellant filed an answer, containing a general demurrer, and certain special exceptions, and denied specifically that the city of Dallas proposed to enforce the said initiative ordinance in the manner stated by the petition of the appellee, and declaring that the said ordinance complained of by appellee was not susceptible of being enforced until the mayor and board of commissioners complied with its directions, all of which more fully appears from the answer, as shown on pages 23 to 26, inclusive, of the transcript. (Said answer was not sworn to.) Upon hearing the petition of appellee read, and the answer of appellant and the argument of counsel thereupon, judgment was entered, overruling appellee's general and special demurrers and granting a temporary injunction, as more fully appears from the judgment, from which judgment the appellant duly perfected its appeal to this court."

The foregoing ordinance embodies the will of the majority of the citizens of the city of Dallas as expressed by ballot at an election duly held in said city, and which election was held by virtue of article 8 of the charter, popularly known as the "Initiative and Referendum" provisions. The vote on said ordinance was canvassed by the board of commissioners, and the result thereof was officially declared to be the adoption thereof, and said ordinance was duly enrolled upon the minutes of said board, and the same duly published under orders of said board of commissioners. The petition of plaintiff attacks said ordinance, and sought an injunction to restrain its enforcement on several grounds: (a) Because in violation of the constitutional guaranties protecting appellee's property; (b) because violative of its vested contract rights; (c) because confiscatory; (d) because in violation of the limits of the city charter. And further, that the franchise and property rights of the plaintiff would be injuriously affected by the existence of said ordinance. The appellant contends that, as the board of commissioners have not passed any ordinance in obedience to the requirement of the initiative ordinance for its enforcement, the injuries likely to result are imaginary, as none could result until the board should pass the ordinance for its enforcement, and that a court of equity will not interfere, by way of injunction, with the discretion reposed by law in a municipal government,' nor will the passing of any ordinance be enjoined because of its alleged or real invalidity, unless such ordinance is actually being enforced by the officers of the government, and that a court of equity will interfere only with the enforcement of invalid municipal ordinances when irreparable injury is threatened to property rights by the actual enforcement, or attempted enforcement, of such ordinance.

[1] If the initiative ordinance is valid, it became effective upon the board of commissioners ascertaining and declaring the result of the election. Charter of the City of Dallas, art. 8; City of Dallas v. St. Ry. Co. (Sup.) 148 S. W. 292. The charter of Dallas provides: "If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city and any ordinance proposed by petition or which shall be adopted by a vote of the people cannot be repealed or amended, except by a vote of the people." In the case of City of Dallas v. St. Ry. Co., supra, where this question was involved, Mr. Justice Phillips, in passing upon the foregoing provision of the charter of Dallas, said: "The plain declaration of this charter provision * * * forbids the view that the completed enactment of this ordinance was dependent upon anything further than the ascertainment by the board of commissioners that a majority of the qualified electors had voted in favor of it." The board of commissioners having declared that a majority of the electors had voted for the ordinance, it became effective in so far as the people and the board of commissioners could make it, irrespective of any further action on the part of the board.

[2] But was the action of the people in voting said ordinance valid and subject to enforcement? Or, in other words, had the people under the provisions of the charter of the city of Dallas any right by vote to initiate any ordinance with reference to regulating the rates of the street railway? We think not. The initiative and referendum provision of the charter is general as to the passage of ordinances, and does not mention the regulation of rates and service of public utility corporations; whereas paragraph 7, § 8, art. 2, delegates this duty to the board of commissioners. Said section provides: "The right is hereby delegated to the city of Dallas, acting through its board of commissioners to determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enjoy a franchise or exercising any other public privilege in said city and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered and from time to time to alter or change such rules, regulations and compensation." And further provides for the making of rules granting a hearing to persons, firms, or corporations to be affected by such regulation, and no

change to be made therein except after notice and hearing to such parties.

The board of commissioners under the charter of the city of Dallas is the only tribunal to which the power to regulate public utility corporations was delegated, and then only after a fair hearing. There is no provision made for a hearing before the people in reference to the advisability of making such change as provided by said ordinance, and therefore the adoption of the ordinance in the manner it was makes it invalid. Our Supreme Court, in passing upon the right of the citizens by initiation to direct an ordinance regulating rates, etc., of a telephone company under the charter of the city of Dallas, in Telegraph Co. v. City of Dallas (Sup.) 134 S. W. 321, speaking through Mr. Chief Justice Brown, said: "Can it be supposed that a Legislature would require a board of commissioners to secure a fair hearing to the party to be affected, and yet would permit some unknown party to draft an ordinance, specifying rates and regulations, without the knowledge of any facts, and submit such ordinance to the popular vote, where there can neither be an investigation nor any character of ascertainment of the facts? That would be to place upon the language of the charter an unreasonable construction. If the charter provided for the submission of such issues to the voters at large, its validity would, at least, be questionable. In Telephone Co. v. Los Angeles, 211 U. S. 280, 29 Sup. Ct. 55, 53 L. Ed. 176, that question was raised, and the court said: 'The charter of the city also contains a provision that upon petition of 15 per cent. of the voters of the city any ordinance proposed must be submitted to the people, and may be by them adopted. It is said, therefore, that the power of rate regulating might be, in this manner, exercised directly by the electorate at large. It may well be doubted whether such a result was contemplated by the Legislature. There are certainly grave objections to the exercise of such a power, requiring a careful and minute investigation of facts and figures by the general body of the people, however intelligent and right minded.' The charter of a city is to its citizens and officers the measure of their authority over persons and property. That charter secured to the plaintiff in error 'a fair hearing'; and, as such hearing was not and could not be had in the adoption of this ordinance, it was not enacted in accordance with the charter and is void."

[3] Although the ordinance is void, and it may never be attempted to be enforced, it stands on the minutes of the city of Dallas as a law, and therefore a menace to the street railway company's property. As said in City of Austin v. Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114, wherein an ordinance regulating the burial of the dead was held void, that "as long as the ordinance remains undisturbed it acts in terrorem, and practically accomplishes a prohibition against the burial of the dead within the limits of the city of Austin, save in the excepted localities."

The contention that as the board of commissioners have not adopted a criminal ordinance for the enforcement of said initiative ordinance, and are not threatening to do so, nor taking any steps to enforce it, the appellee has no right to the writ of injunction. That no criminal ordinance has been passed, or threatened to be passed, we think makes no difference. The ordinance stands as having been passed and it is the duty of the railway company to obey until it is annulled by judicial action or repealed. Although no criminal ordinance for its enforcement be enacted, the appellee is entitled to be relieved from the civil injuries that will result to its property rights.

The petition alleges: "Unless enforcement of same is restrained by your honor's most gracious writ of injunction, the enforcement of same will be attempted by the officers of the city of Dallas and numerous citizens of said city who are and will continue to be patrons of the lines of petitioner's railway system; numerous complaints will result; numerous suits complaining of the refusal of petitioners to comply with said purported ordinance will be brought; its affairs will be thrown into irretrievable confusion, its service to the public interrupted, its franchise privileges disturbed and impaired; its securities depreciated; its employés subjected to the interference and embarrassment in performing their duties to petitioner and to the public; its exchange of business with other carriers will be disturbed; its transfer arrangements in force under and pursuant to ordinances of the city interfered with; its earnings unlawfully diminished, as hereinafter particularly alleged; and its property confiscated to public use without allowing it any adequate return upon its capital invested, as hereinafter particularly shown." The injuries were fully specified in the petition, and authorized the granting of the writ of injunction under the showing made in this case.

The appellee is not seeking to enjoin the board of commissioners from passing an ordinance or interfering with its legal function to legislate for the city, but is seeking to prevent the enforcement of an ordinance already in existence, which enforcement would work irreparable injury to its property rights, etc., and for which it has no adequate remedy at law. Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994.

The learned district judge did not err in granting and perpetuating the injunction, and the judgment is affirmed.