SOUTHWESTERN TELEGRAPH & TELEPHONE COMPANY v. CITY OF DALLAS.

No. 2219. Decided February 15, 1911.

**City—Regulation of Telephone Charges—Ordinance—Board of Commissioners —Initiative.**

By charter of the city of Dallas the powers conferred were vested generally in a Mayor and four Commissioners (art. 3, par. 1); the city was given power by ordinance to regulate rates of telephone companies (art. 2, sec. 8, par. 27); the right to regulate rates was to be exercised on a fair hearing to persons affected, and the manner of determining their reasonableness regulated (art. 2, sec. 8, par. 7); and on petition of a certain proportion of the voters therefor any proposed ordinance was to be submitted to popular vote and become effective if receiving a majority of the votes cast. Under this initiative provision a proposed ordinance regulating the charges of telephone companies was submitted to popular vote and received a majority. Held:

(1) That the words "any proposed ordinance" in such provision for the initiative meant any ordinance on a subject to which that method was applicable.

(2) That it did not apply to an ordinance regulating rates, the hearing secured by the charter to those affected thereby being impossible in such method of adoption.

(3) That a municipal corporation possesses no power not derived from its charter, and the general terms, "full powers of self-government" and "all powers of municipal government not prohibited by this charter," add nothing to its terms.

(4) That the charter provision for a hearing by persons affected upon a regulation of rates was not special power, but a prescribed method of executing a general power, and was not affected by a provision that the specification of particular powers should not be construed as a limitation upon the general powers granted.

(5) That the ordinance regulating rates of the telephone company was not legally adopted under the charter of the city, by the popular vote taken under the initiative. (Pp. 118-122.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Dallas County.

The telephone company sued the city to restrain the enforcement of an ordinance regulating its rates which it claimed was not legally adopted. Judgment was for defendant and was affirmed on appeal by the company. It then obtained writ of error.

*A. P. Wozencraft, W. S. Bramlett* and *D. A. Frank,* for plaintiff in error.—Section 8 of the city charter under which the right to ordain initiative ordinances by a vote of the qualified electors is given does not authorize the ordaining and passing a regulation of rates of a telephone company by this method. Gulf, etc., Ry. Co. v. Ramboldt, 67 Texas, 656; Erwin v. Blanks, 60 Texas, 585; City of Marshall v. Bank, 127 S. W., 1086; Smith v. Grayson County, 44 S. W., 923, 18 Texas Civ. App., 153; State ex rel Transfer Co. v. Clifford, 128 S. W., 755; Pickle v. Finley, 91 Texas, 487.

The city of Dallas, as provided by the Constitution of the State, in so far as it may be authorized in the regulation of rates of public service corporations such as plaintiff is controlled by, is a representative form of government and not a communal form of government where the unsworn voters of such municipality are authorized to pass ordinances to regulate rates of public service corporations without a hearing or the possibility of a hearing, and such power can not be construed to have been intended to be given in said city charter, and the said city charter, if so construed, and the said provisions thereof to that effect, are unconstitutional and void. State v. Swisher, 17 Texas, 441; Aqua Pura Co. v. Las Vegas (N. M.), 50 L. R. A., 224; Tel. & Tel. Co. v. Los Angeles, 211 U. S., 280; Elliott v. Detroit, 121 Mich., 611; 1 Dillon Munc. Corp., 46, et seq. (4th ed.); 1 Taylor, Origin & Growth Eng. Const., 39; Const. of Texas, art. 1, sec. 2; Const. of U. S., art. 4, sec. 4; State v. Harris, 2 Bailey, 598; Luther v. Borden, 7 How., 1; Hill v. City of Boston, 23 Am. Rep., 332; Duncan v. McCall (U. S.), 35 L. Ed., 224.

The charter under which such pretended action was taken expressly provided that before regulations affecting the rates of such corporation as this plaintiff could be ordained provision should be made for giving a hearing to such corporation, and a hearing should have been given; therefore said ordinance, which was passed without any such hearing as was provided by law and the terms of said charter, is void and was enacted contrary to the provisions of said charter. Authorities first above cited. Also, Hutcheson v. Storrie, 92 Texas, 685; Turpin v. Lemon, 187 U. S., 51; Uhlman v. Baltimore (Md.), 11 L. R. A.. 224;

Tel. & Tel. Co. v. Los Angeles, 211 U. S., 280; Aqua Pura Co., v. Las Vegas (N. M.), 60 Pac., 208, 50 L. R. A., 224.

The ordinance sought to be enjoined in this case required plaintiff to furnish service throughout the month and render its bills on the first day of the month next succeeding the month for which its service is rendered, and to wait ten days for the collection of the same is therefore invalid. Railway Co. v. Henderson, 86 Texas, 312; Railway Co. v. Ferris, 26 Texas, 599; Railway Co. v. State, 120 S. W., 1037; Railway Co. v. Smith, 128 U. S., 174; Stone v. Farmers L. & T. Co., 116 U. S., 307-331; Smith v. Ames, 169 U. S., 523; Railway Co. v. Telegraph Co., 46 Ga., 43.

No authority can be given said city under the constitutional provisions creating or regulating the creation of municipal corporations to control and regulate the rates of service of a corporation so giving for a flat rate or stipulated sum per month such telephone service where its telephone instruments are situated within and without the city of Dallas and may be used for conversations between such telephones situated within and without the city of Dallas and from such telephones situated without the city of Dallas to telephones in the city of Dallas, and said ordinance is therefore void. Railway Co. v. Galveston, 90 Texas, 398; Water Co. v. City of Palestine, 91 Texas, 548; Bradshaw v. Langford (Md.), 25 Am. St. Rep., 602; Loan Assn. v. Hardy, 86 Texas, 610; Thompson Exc. v. Cobb, 95 Texas, 147.

The Court of Civil Appeals erred in holding that the ordinance complained of by the Southwestern Telegraph & Telephone Company was not intended to in any way affect the rates to be paid by parties living beyond the city limits of the city of Dallas who might be subscribers to said Dallas, Texas, telephone exchange system. Same authorities. Also: Read v. Levy, 30 Texas, 742; Dodson v. Bunton, 81 Texas, 658; Rosenfield v. Condict, 44 Texas, 464-6.

The Court of Civil Appeals, after holding that the city charter of the city of Dallas conferred upon the electors of the city of Dallas the power to initiate an ordinance and to adopt the same by their votes whereby the time when the appellant in this case should have the right to present its bills for telephone service, erred in further holding that the ordinance complained of herein determining said time for presenting said bills, and determining that the subscribers to the exchange should have ten days thereafter in which to pay said bills, is reasonable and valid. Austin v. Cemetery Assn., 87 Texas, 336; Railway Commission v. Railway Co., 16 Texas Civ. App., 129; Teleph. Co. v. Turner (Neb.), 19 L. R. A. (N. S.), 693, and note; Yancey v. Telephone Co. (Ark.), 99 S. W., 679-681; Magruder v. Telephone Co. (Miss.), 46 So., 404; Telephone Co. v. Irwin (Ind.), 59 N. E., 327; Malochee v. Telephone & Tel. Co., 49 La. Ann., 690; Hewlett v. Telegraph Co., 23 Fed., 181; McPherson v. Telegraph Co., 1 Am. Elec. Cas., 755; Light Co. v. Milwaukee, 87 Fed., 577.

The ordinance requires that plaintiff shall extend credit for more than thirty days to its subscribers without any security of any kind and without option on its part and without regard to the question of whether or not such subscriber is solvent or has other qualifications entitling him to credit, and said ordinance is therefore oppressive,

unjust and void. Same authorities. Also: Ward v. Mayor, etc., Greenville (Tenn.), 35 Am. Rep., 700, and note; Teleph. & Tel. Co. v. Luckett, 127 S. W., 859; State ex rel Webster v. Teleph. Co., 17 Neb., 128, 52 Am., 404; Yancey v. Teleph. Co. (Ark.), 99 S. W., 679.

*James J. Collins* and *Jno. C. Robertson,* for defendant in error.—A court of equity will not interfere, by injunction, with the enforcement of a valid penal ordinance. City of Galveston v. Mestrol, 47 Texas Civ. App., 63; Wade v. Nunnelly, 19 Texas Civ. App., 256; Greiner Drug Co. v. Truett, 97 Texas, 380; Ex parte Sawyer, 124 U. S., 200; Davis v. Farnum Mfg. Co., 189 U. S., 781.

The Legislature of the State has the unquestioned right to delegate to a municipality the power and authority to regulate the rates and service of public corporations using and occupying the public highways, and streets of the city, and where such right is delegated the city may pass ordinances in pursuance thereof. Home Tel. & T. Co. v. Los Angeles, 155 Fed., 554, 211 U. S., 265; McGullon's Mun. Ordinances, sec. 583, pp. 905-910; Lewis, Eminent Domain, sec. 246, p. 480 (3d ed., vol. 1).

Article 8 of the city charter, known as the Initiative and Referendum Provision, expressly authorizes, when read in light of the other provisions of the charter, the ordinance in question, and the said ordinance need not be passed by the Board of Commissioners, as contended by appellant. It is entirely competent and admissible for the Legislature to authorize that municipal ordinances may be passed and enacted by a vote of the people, and the exercise of such authority is not a delegation of a legislative power to the people. Johnson v. Martin, 75 Texas, 39; Stanfield v. State, 83 Texas, 321; Cooley, Con. Lim. (7th ed.), p. 895; City of Galveston v. Brown, 97 Texas, 1; City of Dallas v. Western Elec. Co., 83 Texas, 243.

That the initiative provision of the city charter is not violative of either the State or Federal Constitution. In re Pfahler, 88 Pac., 270; Skadderly v. City of Portland, 74 Pac., 710; State v. Pac. St. Tel. Co., 95 Pac., 435; People v. Saur, 74 Pac., 157.

It is competent for the Legislature to provide, in whichever way it may deem expedient, the kind of a local government a municipal corporation may possess, and the manner in which it may exercise the powers conferred upon it. Brown v. City of Galveston, 97 Texas, 1.

The appellant being a public corporation or a common carrier, it performs its public duty at all times subject to such regulations controlling its said duties as may be imposed upon it by the public authorities. Sec. 17 of art. 1 of the Constitution; Street Railway Co. v. Sioux City, 138 U. S., 98; San Antonio Traction Co. v. Altgelt, 200 U. S., 491; Storie v. Street Ry. Co., 92 Texas, 129-140-141; section 242, p. 380, McQuillon's Municipal Ordinances.

The fact that appellant has contracts existing between itself and its patrons, concerning the furnishing of its service to its patrons, does not preclude the government from imposing regulations upon the said appellant, which regulations may have the effect of changing or altering said contracts. Sec. 17, art. 1 of the Constitution; Storie v. Street Ry. Co., 92 Texas, 129-140-141; San Antonio Trac. Co. v. Altgelt, 200

U. S., 491; Chillicothe v. Logan N. Gas & F. Company, 8 Oh. N. T., 88; Street Railway v. Sioux City, 138 U. S., 98; McQuillon, Municipal Ordinances, sec. 242, p. 380.

The Initiative and Referendum provision of the charter is not void because it does not provide for a notice to be given to public corporations whenever an attempt is made by the people to exercise the rate regulation, because the exercise of such power is legislative and no notice is required. Home Tel. & Tel. Co. v. Los Angeles, 155 Fed., 554.

The telephone company is a common carrier, and as such, it is subject to regulation by the government, and it owes a duty to the citizens at common law to furnish its service equally and alike to all. State ex rel Am. U. Tel. Co. v. Bell Telephone Co., 36 Ohio St., 296, 38 Am. Rep., 583; State ex rel Webster v. Nebraska Tel. Co., 17 Neb., 126, 52 Am. Rep., 404; Central Un. Tel. Co. v. State, 118 Ind., 194, 10 Am. St., 114; State v. Nebraska Tel. Co., 17 Neb., 126, 59 Am. St., 167; Nebraska Tel. Co. v. State, 55 Neb., 627.

A corporation can not disable itself by contract from performing the public duties which it has undertaken, and by agreement compel itself to make public accommodation or convenience subservient to its private interests. Gibbs v. Consolidated Gas Co., 130 U. S., 396.

The right of a foreign corporation to engage in business within the State of Texas, or within the city of Dallas depends solely upon the will of the State or municipality. The laws of the State and ordinances of the city are conditions precedent upon the right of a foreign corporation to engage in business therein. Waters-Pierce Oil Co. v. Texas, 177 U. S., 48; 19 Texas Civ. App., 19; Hooper v. California, 155 U. S., 648; Philadelphia Life Ins. Co. v. Metler, 185 U. S., 922.

A corporation can not invoke the provisions of section 2, article 4, of the Federal Constitution of the fourteenth amendment, which gives to the citizens of each State the privileges and immunities of the citizens of the several States. D. C. S. M. & M. Co. v. Pennsylvania, 125 U. S., 181; Blake v. McCling, 172 U. S., 239.

Mr. Chief Justice Brown delivered the opinion of the court.

The city of Dallas, having a population of more than ten thousand, was granted a charter by the Thirtieth Legislature which contains the following provisions pertinent to the issues which are presented by the writ of error in this case:

"Paragraph 1 of article 3 reads:

" 'All powers conferred on the city shall, unless otherwise provided in this charter, be exercised by a Mayor and four Commissioners, who together shall be known and designated as the Board of Commissioners, all of whom shall be elected by the qualified voters of the city at large and shall devote their entire time to the service of the city.

" 'The Mayor shall be ex-officio president of the said Board of Commissioners, and shall have and exercise all of the powers of a member thereof.' "

"Paragraph 27 of section 8 of article 2 reads:

" 'The city of Dallas shall have the power, by ordinance, to fix and regulate the price of water, gas and electric lights, and to regulate and

fix the fares, tolls and charges of local telephones and exchanges; of public carriers and hacks, whether transporting passengers, freight or baggage, and generally to fix and regulate the rates, tolls or charges, and the kind of service of all public utilities of every kind.' "

"Paragraph 7 of section 8 of article 2 reads:

" "The right is hereby delegated to the city of Dallas, acting through its Board of Commissioners, to determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enoy a franchise or exercising any other public privilege in said city and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered, and from time to time to alter or change such rules, regulations and compensation. The Board shall make rules and regulations granting a fair hearing to persons or corporations to be affected by said regulations, and no change in regulations shall be adopted except after notice to the persons affected and after a fair hearing shall be granted them; provided, that in adopting such regulations and fixing such compensation, or determining the reasonableness thereof, no stocks or bonds authorized or issued by any corporation enjoying a franchise shall be considered unless upon proof that the same have been actually issued by the corporation for money paid and used for the development of the corporate property, labor done or property actually received in accordance with the laws and Constitution of the State applicable thereto; and in order to ascertain all facts necessary for a proper understanding of what is or should be a reasonable rate or regulation, the Board of Commissioners shall have full power to inspect books and compel attendance of witnesses as provided in subsection 6 hereof and may prescribe all penalties named in subsection 6 for a failure or refusal to attend and testify or produce books.' "

"Paragraph 1 of article 8, known as the Initiative and Referendum article of the charter, among other things, provides:

" '(Any proposed ordinance may be submitted to the Board of Commissioners by a petition signed by registered electors of the city equal in number to the percentages hereinafter required.) . . . If the petition be signed by the electors equal in number to at least five percent, but less than fifteen percent, of the entire vote cast for all the candidates for Mayor at the last preceding general election at which a Mayor was elected, then such ordinance, without alteration, shall be submitted by the Board of Commissioners to a vote of the people at the next general municipal election that shall occur at any time after thirty days from the date of the secretary's certificate of sufficiency attached to the petition accompanying such ordinance.

" 'If a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the city, and any ordinance proposed by petition, or which shall be adopted by a vote of the people can not be repealed or amended except by a vote of the people.' "

"Paragraph 2 of section 1 of article 2 of said charter provides as follows:

" ' . . . Provided further, that the specification of particular powers herein authorized shall never be construed as a limitation upon

the general powers herein granted, it being intended by this Act to grant and bestow upon the inhabitants of the city of Dallas full power of self-government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general law of the State of Texas, or by the provisions of the Constitution of the State of Texas.' "

Conforming in all respects to the requirements of the charter, the electors of the city of Dallas, by a majority vote, adopted this ordinance which was duly enrolled by the Board of Commissioners:

" 'Be it ordained by the Board of Commissioners of the city of Dallas:

" 'Section 1. That no person, firm, corporation, receiver or lessee operating a telephone system in the city of Dallas, shall charge subscribers more than $5.00 per month per phone for unlimited single line business service, or charge more than $2.00 per month per phone for unlimited single line residence service.

" 'Section 2. That bills for such telephone service shall become due and shall be presented on the first day of the month following the rendering of the service, and such bills shall be subject to a discount of ten percent if paid on or before the 10th day of said month.

" 'Section 3. That any person, firm, corporation, receiver or lessee operating a telephone system in the city of Dallas, who shall violate any of the provisions of this ordinance, shall be fined $200 upon conviction in the Corporation Court of the city of Dallas.' "

Paragraph 27 of section 8, article 2 of the charter of the city of Dallas declares that the power therein conferred shall be exercised by ordinance, and paragraph 7 of the same section directs that such ordinances shall be enacted by the Board of Commissioners of the said city. There can be no doubt that the authority to so regulate the business named in the said sections may be exercised by the Board of Commissioners. The question in this case is, had the voters the right, also, by the method of initiation prescribed, to present the ordinance in question to the Board of Commissioners for submission to the qualified voters of the city,

The method by which an ordinance may be submitted is prescribed in paragraph 1 of article 8. The language is: "Any proposed ordinance may be submitted to the Board of Commissioners by a petition signed by registered electors of the city, equal in number to the percentages hereinafter required," etc. Counsel for the city seem to understand this language to mean that an ordinance on any subject of legislation mentioned in the charter may be presented under this method of initiation to the Board of Commissioners and that such presentation precludes action by the Board of Commissioners. We are of opinion that the language, "any proposed ordinance," means that an ordinance upon any subject to which the initiatory method is applicable may be presented in the manner prescribed to the Commissioners. It does not mean that all ordinances upon any subject of legislation mentioned in the charter may be enacted in that manner.

Paragraph 27 of section 8 prescribes that the authority to regulate such business as that involved in this litigation shall be exercised by ordinance, but it does not provide by what department the ordinance

shall be enacted, whether by the Board of Commissioners on their own initiative, or by the voters of the city by the initiatory method prescribed in paragraph 1 of article 8 of the charter. Paragraph 7 of the same section and article reads: "The right is hereby delegated to the city of Dallas, acting through its Board of Commissioners, to determine, fix and regulate the charges," etc., after a fair hearing on the reasonableness of such rates.

In the exercise of the power to regulate and fix rates, etc., there must be a body who can hear evidence and decide upon the reasonableness and unreasonableness of the rate or regulation, and if that can not be done by the initiative—the popular vote—then, the authority can not be exercised in that manner. Can it be necessary to offer argument to show to any man that such hearing as the law provides could not be had in a campaign before the electorate of the city? It is too manifest for controversy.

Can it be supposed that a Legislature would require a Board of Commissioners to secure a fair hearing to the party to be affected and yet would not permit some unknown party to draft an ordinance, specifying rates and regulations, without the knowledge of any facts, and submit such ordinance to the popular vote where there can neither be an investigation nor any character of ascertainment of the facts? That would be to place upon the language of the charter an unreasonable construction. If the charter provided for the submission of such issues to the voters at large, its validity would, at least, be questionable. In Telephone Co. v. Los Angeles, 211 U. S., 280, that question was raised and the court said:

"The charter of the city also contains a provision that upon petition of fifteen percent of the voters of the city any ordinance proposed must be submitted to the people and may be by them adopted. It is said, therefore, that the power of rate regulation might be, in this manner, exercised directly by the electorate at large. It may well be doubted whether such a result was contemplated by the Legislature. There are certainly grave objections to the exercise of such a power, requiring a careful and minute investigation of facts and figures, by the general body of the people, however intelligent and right-minded."

The charter of a city is to its citizens and officers the measure of their authority over persons and property. That charter secured to the plaintiff in error "a fair hearing," and, as such hearing was not and could not be had in the adoption of this ordinance, it was not enacted in accordance with the charter and is void.

There is no conflict between paragraph 1 of article 3 and paragraph 27 of section 8 herein copied. They refer to different subjects of legislation and each can be sustained and applied to its subjects. There is nothing in our Constitution which forbids the Legislature to submit proper subjects to the voters of a city by the initiative. The authority of the Legislature in creating municipal corporations is ample for such purpose. Brown v. City of Galveston, 97 Texas, 1.

Counsel for the city invoke this provision of the charter: "And provided further, that the specification of .particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted, it being intended by this Act to grant and

bestow upon the inhabitants of the city of Dallas full power of self-government, and it shall have and exercise all powers of municipal government not prohibited by this charter, or by some general law of the State of Texas, or by the provisions of the Constitution of the State of Texas."

A municipal corporation possesses no power not derived from its charter, therefore, the general terms, "full powers of self-government," and "all powers of municipal government not prohibited by this charter," add nothing to the terms of the charter. We still must look to the charter for the authority to sustain an act done by the corporation. 28 Cyc., 258, B. Powers; City of Brenham v. Water Co., 67 Texas, 542.

The charter of the city of Dallas committed the authority to fix and regulate rates of telephone companies to the Board of Commissioners, which is not a special power, but is the prescribed method of executing a general power; therefore, the clause invoked and quoted above is not applicable to these facts.

The District Court erred in holding that the ordinance in question is valid—it is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that this case be remanded to the District Court to be disposed of in accordance with this opinion.

*Reversed and remanded.*