# APRIL, 1925.

## DALLAS RAILWAY COMPANY v. F. G. GELLER.

### No. 3912.   Decided April 22, 1925.

### (271 S. W. 1106).

1.—Municipal Corporation—Franchise—Contract—Street Railway—Regulation of Charges.

The power of a municipality in granting a franchise to a public service corporation (as a street railway) to create thereby a contract fixing charges to be made by it for its services is by the Constitution (Art. 1, Sec. 17) subject to the power of the Legislature or that of the legislative branch of the municipality to which it may commit such authority to revise and regulate. from time to time, the rates to be charged for such services.   (Pp. 487, 488).

2.—Same—Cases Discussed.

The rulings in San Antonio Tr. Co. v. Altgelt, 81 S. W., 106; Same Case, 200 U. S., 304, discussed and limited.   (P. 488).

3.—Same—Ordinance—Charter—Referendum.

The general terms of the charter of the City of Dallas providing for a referendum to popular vote of ordinances adopted by its governing Commission do not apply to an enactment by the Board of Commissioners regulating fares to be charged by a street railway operating under a franchise granted by the City.   Article 2, section 8, par. 7, of the Charter, conferring such power on the Board of Commissioners provides for a hearing of the party interested, with inspection of books, attendance of witnesses, etc. as a condition of exercising such powers, which could not be complied with by the people in acting on that subject by referendum vote.   (Pp. 489, 490).

4.—Case Stated.

A street railway by its franchise granted by the City of Dallas and submitted to and adopted by a referendum vote was entitled to charge only five cents per passenger.   The City Commission, under authority given by the

Charter raised the rate to six cents and refused a petition to submit the change to a referendum vote. On suit of a tax payer and patron of the line the raise was held valid without submission to a referendum vote, and injunction against charging the six cent rate held properly refused. (Pp. 486-490).

Error to the Court of Civil Appeals for the Fifth District in an appeal from Dallas County.

Geller sued the Dallas Railway Co. for an injunction and demurrer was sustained to his petition. On his appeal the judgment was reversed and the Railway Company obtained writ of error.

*Beall, Worsham, Rollins, Burford & Ryburn,* for plaintiff in error.

It would seem that no further argument in support of the correctness of the decision of the Honorable Court of Civil Appeals in its answer to question number One would be required, in view of the decisions in the cases of San Antonio Traction Company v. Altgelt, 81 S. W. 106; San Antonio Traction Company v. Altgelt, 200 U. S. 305; San Antonio v. San Antonio Public Service Company, 65 Law Ed. 777; Houston v. S. W. Bell Telephone Company, 66 Law Ed. 961; City of Dallas v. Dallas Telephone Company, 272 Federal 410; City and County of Denver v. Stinger, Receiver, 277 Fed. 865; and especially the decision of this Honorable Court in the City of Uvalde v. Uvalde Electric Light & Power Company, 250 S. W., 140.

The Ordinance of June 24th, 1922, authorizing the Dallas Railway Company to charge a maximum Six-Cent Fare was not subject to a referendum under the terms and provisions of the Charter of the City of Dallas, and under the Constitution of the State of Texas, and of the United States. Southwestern Telephone & Telegraph Company v. City of Dallas, 104 Texas, 114; Lindsley v. Dallas Consolidated Street Railway Company, 200 S. W., 211; Ex Parte Farnsworth, 135 S. W., 538; City of Dallas v. Dallas Consolidated Electric Street Railway Company, 159 S. W., 76.

Section 1, Article 3 of the City Charter expressly provides that "all powers vested in the City of Dallas, where not otherwise expressly provided, shall be exercised by the Mayor and Board of Commissioners."

*Nelson Phillips* and *Baker, Botts, Parker & Garwood,* as *amici curiœ* filed briefs in support of the positions of plaintiff in error.

*W. S. Bramlett,* for defendant in error.

The action of the trial court in sustaining the general demurrer and dismissing the cause, upon the facts averred, was erroneous, requiring a reversal. The ruling of the Honorable Court of Civil Appeals so holding is correct. Payne v. Graham, (Mo.), 107 Atl.,

709; State v. Sullivan, (Mo.), 224 S. W., 334, 337; State ex rel Pollock v. Becker, (Mo.), 233 S. W., 641; Merrill v. City of Lowell, 236 Mass., 463, 128 N. E., 862.

The schedule of rates prescribed by the franchise ordinance, in respect to the maximum fares plaintiff in error may demand and collect, is contractually binding upon it. Athens Teleph. Co. v. Athens, 182 S. W., 42 s. c. 163 S. W., 371; Dallas v. Dallas Consolidated etc. Ry. Co., 33 S. W., 757; Texarkana Gas. & Elec. Co. v. Texarkana, 123 S. W., 213; Mayor etc. of Houston v. Houston City St. Ry. Co., 83 Texas, 548, 558; McLaughlin v. City of Newton, (Ia.), 178 N. W., 540; Railway Co. v. Galveston, 69 Texas, 660; Birmingham & Pratt Mines St. Ry. Co. v. Birmingham St. Ry. Co., 79 Ala., 465, 58 Am. Rep., 615; Bienville Water Co. v. Mobile, 186 U. S., 219; Town of New Decatur v. Am. Tel. & Tel. Co., 176 Ala., 492, 58 So. 613-632.

The ordinance of June 24, 1922, not being emergent in character as defined by the provision of section 2, Article VIII, of the charter, the presenting of the protesting petition as shown by the averments of defendant in error's bill of complaint suspended said ordinance from going into operation, and the same is now without force and effect. State ex rel. Kemper v. Carter, 257 Mo., 52, 165 S. W., 773; Richards v. Whisman, 36 S. D., 260, 154 N. W., 707.

*James J. Collins* City Attorney of Dallas, *J. B. Rector*, City Attorney of Austin, *J. E. Rouen*, City Attorney of Ft. Worth, *F. S. Anderson*, City Attorney of Galveston, and *T. H. Ridgeway*, City Attorney of San Antonio, as amici curiæ, filed briefs on the effect of the ruling on appeal upon the powers of cities.

MR. JUSTICE PIERSON delivered the opinion of the court.

Defendant in error, F. G. Geller, alleging himself to be an elector, voter, and citizen of the City of Dallas, Texas, and a patron of the Dallas Railway Company, brought this suit in the District Court of the Forty-fourth Judicial District of Texas at Dallas, seeking to enjoin plaintiff in error, Dallas Railway Company, from raising the charge or fare for carrying its passengers over its lines of street railway from the five cent rate to a six cent rate, as was provided and authorized in an ordinance passed by the Board of Commissioners of the City of Dallas on June 24, 1922.

In 1917 the plaintiff in error had received a franchise from the City of Dallas to operate its lines of street railway upon and over the streets of the City of Dallas. The ordinance by which said franchise was granted in 1917 was submitted to and approved by the electors of the City of Dallas under the referendum provision

of the City charter. The franchise so granted prescribed a schedule of rates for the carriage of passengers, and designated five cents as the maximum fare to be charged.

It is the contention of defendant in error, Geller, that the said franchise of 1917 was and is a contract, such as can not be altered or changed by the City under its powers to fix, change, or regulate the schedule of rates for public service corporations, but binds plaintiff in error during the life of the franchise to a five cent rate, and that the ordinance of 1922 granting plaintiff in error permission to charge a six cent fare is invalid on account thereof. He further contends that before said ordinance changing, regulating, and increasing the rate should take effect, it must be approved by vote of the electors under the referendum provision of the city charter in accordance with the petition filed by the requisite number of electors as prescribed by said charter.

On hearing, the trial court sustained plaintiff in error's general demurrer and special exceptions, and dismissed the case.

The Honorable Court of Civil Appeals for the Fifth Supreme Judicial District held that the ordinance involved in this case was one regulating the rate schedule, that the schedule of rates was subject to constant regulation by the governing body of the municipality granting it, and that the ordinance changing the rate schedule was not void, but held it inoperative until approved by the electors of the City of Dallas under the referendum provision of the City's charter. The court, speaking through Chief Justice Sargeant, held that the franchise ordinance of 1917 was not a *fixed contract binding for the life of the franchise*, but one regulating a *rate schedule which is subject to revision* from time to time by the legislative branch of the municipality, and cites Sec. 17, Art. 1 of the Constitution of Texas; San Antonio Tr. Co. v. Altgelt, 81 S. W., 106 (writ of error denied); the same case in 200 U. S., 304; San Antonio v. San Antonio Public Service Co., 255 U. S., 547; Southwestern Tel. & Tel. Co. v. City of Dallas, 174 S. W., 636.

Perhaps the City Attorneys, Amici Curiæ, are unduly or unnecessarily alarmed, construing, as they do, the opinion of the Honorable Court of Civil Appeals to hold that a municipality cannot make contracts that are binding upon public service corporations.

In the first case cited the Court of Civil Appeals for the Fourth Supreme Judicial District said:

"The Legislature has the power to regulate the rates of fare of a street railway company in the absence of any provision in its charter relinquishing that right (Wood on Railroads (Miner's Ed.) 1658; Nellis, St. Railroads, 40), provided, however, the rates established are not so unreasonable as to practically destroy the value of

the property of the corporation, and thereby depriving it of its property without due process of law, and denying. it equal protection of the law.   *   *   *   This right under the present Constitution, cannot, as we have seen, be relinquished by a provision in the company's charter.''

The Supreme Court of the United States in 200 U. S., 304, said: ''Assuming, but not deciding, that the ordinance of March 16, 1899, extending the franchise of the San Antonio Street Railway, and imposing certain limitations, constituted a contract *pro tanto*, the question still remains whether the provision 'that said street railway companies' shall charge five cents fare for one continuous ride over any one of their lines, with one transfer to or from either line to the other,' constituted a contract with respect to which no further legislation upon that subject could be enacted without impairing its obligation.   Even if construed as a contract, it was still subject to the provisions of the constitution of 1876, which in section 17 of the bill of rights declared that no irrevocable or uncontrollable grant of special privileges or immunities should be made; but that all privileges granted by the legislature or created under its authority shall be subject to the control thereof.

*     *     *     *     *      *     *     *

''Under the bill of rights of that constitution the legislature could not reduce the fares to a confiscatory amount or to an amount which would render it unprofitable to operate the road.''

With this construction as limited and defined in the cases last cited, we are in accord.   We incline to the view that the Honorable Court of Civil Appeals intended to go no further than to hold, in accord with the above mentioned case of San Antonio Tr. Co. v. Altgelt, 81 S. W., 106, in which this Court refused a writ of error. and with the Supreme Court of the United States in the same case (200 U. S., 304), and the other cases cited above, wherein it was held that a rate schedule as in this case is subject to legislative control within the limitations of the Constitution and the laws which control the rights of property.

This holding in this case in no wise contradicts the holding in the case of Mayor et al. v. Houston Railway, 83 Texas, 548, 19 S. W., 127.

The right or power to further control or regulate the grant in regard to the rate schedule is a reservation to the municipality, and not an inhibition to contract; and where a franchise is accepted by a grantee, this reservation provided in the law becomes a part of the contract.

The matter of changing, fixing, or regulating the charges, fares, or rates of a public service company or corporation, and of determin-

ing what the compensation for such service should be and its reasonableness. is both legislative and judicial in character, and in its nature one which is at least impracticable, if not impossible, for the public at large, the voters, to pass on. They cannot have or digest the information, data, and facts necessarily incident and essential to the forming of a correct, accurate, and fair judgment upon the subject. Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas, 114; City of Dallas v. Dallas Con. El. St. Ry. Co., 159 S. W., 76.

Further, we think it clear that the charter provisions themselves reserve from referendum the fixing and regulating of the schedule of rates. That the fixing· and regulating of the schedule of rates was not to be subject to referendum is clearly shown in that paragraph of the City charter relating to that subject. Paragraph 7 of Section 8 of Article 2 declares:

"The right is hereby delegated to the City of Dallas, *acting through its Board of Commissioners,* to determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enjoy a franchise or exercising any other public privilege in said City and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered, *and from time to time alter or change* such rules, regulations and compensation. *The Board* shall make rules and regulations granting *a fair hearing* to persons or corporations to be affected by said regulations, and no change in regulations shall be adopted except after notice to the persons affected and after a fair hearing shall be granted them; that in adopting such regulations and *in fixing or changing such compensation, or determining the reasonableness thereof,* no stocks or bonds authorized or issued by any corporation enjoying a franchise shall be considered unless upon proof that the same have been actually issued by the corporation for money paid and used for the development of the corporate property, labor done or property actually received in accordance with the laws and constitution of the State applicable thereto; *and in order to ascertain all facts necessary for a proper understanding of what is or should be a reasonable rate* or regulation, the *Board of Commissioners* shall have full power to *inspect books and compel attendance of witnesses* as provided in sub-section 6 hereof and may prescribe all penalties named in subsection 6 for a failure or refusal to attend and testify or produce books." * * * (Italics ours).

Under proper construction of the charter the City of Dallas does not provide for referendum on rate schedules. True, the referendum provision is broad, and provides generally for referendum of ordinances, but that provision must be construed in connection with

the plain and specific provision relating to the fixing and regulating of rate schedules so as to give effect to its plain specific requirements.

It is hardly necessary to repeat, analyze, or emphasize the provisions of the above paragraph. It is clearly provided that the City shall act through the Board of Commissioners in determining, fixing, and regulating the charges, fares, and rates, and in prescribing the kind of service to be furnished; that the *Board* shall make rules, and grant a *fair hearing*; that the *Board of Commissioners* shall be empowered to inspect books, hear testimony (and for that purpose have power to compel attendance of witnesses), and to ascertain all the necessary facts about the properties and the conditions of the service for a proper understanding of what is or should be a reasonable rate. It would be to abrogate this provision of the charter to require that these matters be referred to a vote of the electors of the City.

In construing and applying both the provisions of the charter, the one providing for the referendum and this provision relating to rate schedules, effect should be given to both, especially where to do so does no violence to either but gives effect to the clear intendment of the charter and avoids an absurdity. See the opinion of this Court in the case of Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Texas 114, 134 S. W., 321. Further discussion is unnecessary.

The judgment of the Court of Civil Appeals is reversed, and that of the District Court is affirmed.