## GLASS et al. v. SMITH et al.
### No. 9947.

Court of Civil Appeals of Texas.
Feb. 28, 1951.

Rehearing Denied March 28, 1951.

Trueman E. O'Quinn, W. T. Williams, Jr. and Robert L. Burns, all of Austin, for appellants.

Cofer & Cofer, Austin, for appellees.

HUGHES, Justice.

This is a mandamus proceeding instituted by six members of the Fire Department of the City of Austin, appellees, against the City Council, City Manager, and City Clerk of the City of Austin, appellants, to compel

the performance of ministerial duties in connection with the submission of a proposed ordinance initiated by citizens of the City of Austin, including appellees, at a special election to be held in accordance with the provisions of Article IX of the Charter of the City of Austin.

The trial court, acting without a jury, granted the relief sought by appellees.

The facts are without dispute.

Section 1 of Art. IX of the Austin City Charter provides, in part[1]: "The citizens of the City of Austin may propose and submit to the City Council ordinances in the following manner: By petition signed by at least twenty-five per cent of the highest vote cast for councilman at the last preceding general election. The petition shall set forth the proposed ordinance, and contain a request that the same be enacted into law by the Council. * * * If the petition is shown to be sufficient by the certificate of the Clerk, he shall submit the same to the Council without delay, and the Council shall either (a) pass the ordinance set out in said petition without alteration within ten days after the date of the Clerk's certificate of sufficiency thereon; or (b) submit the same to a vote of the qualified voters of the City at a special election to be called for that purpose within forty days from the date of said certificate, unless a general municipal election is fixed within ninety days thereafter, and then at such general municipal election such ordinance shall be submitted without alteration of any kind. * * * If a majority of the qualified votes cast is in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the City, and any ordinance so enacted shall not be repealed or amended, except by vote of the people. * * *"

The ordinance proposed to be submitted is as follows:

"Section 1. In accordance with the provisions of this ordinance and the acts of the Regular Session of the 51st Legislature of Texas, Chapter 572, Section 2, p. 1114, the Civil Service Commission in the City of Austin shall provide for the classification of all firemen and policemen employed in the City of Austin according to the classification hereinafter set out in Section 2 of this ordinance. The City Council of the City of Austin shall from time to time prescribe by ordinance the number of positions in each classification.

"No classification now in existence, or that may be hereafter created in the City of Austin, shall ever be filled except by examination held in accordance with the provisions of the Fireman's and Policeman's Civil Service Act of the State of Texas for cities over 10,000 (Acts of 1947, 50th Leg. of Texas, p. 550, ch. 325, and amendments thereto). All persons in each classification shall be paid the same salary and in addition thereto be paid any longevity or seniority pay that he may be entitled to. Computation of service time shall be figured retroactively to time of employment of the individual employees respectively entitled to such longevity payment. Nothing in this ordinance shall prevent the Head of the Department involved from designating some person from the next lower classification to fill a position in a higher classification temporarily, but any such person so designated by the Head of the Department shall be paid the base salary of such higher position plus his own longevity pay during the time he performs the duties thereof. Such temporary appointment must be made from the next lower classification, except upon an emergency where no employee in such next lower bracket is available. The temporary performance of the duties of any such position by a person who has not been promoted in accordance with the provisions of this ordinance and the General Law shall never be construed to promote such person. All vacancies shall be filled by permanent appointment from eligibility lists furnished by the Commission within ninety (90) days after such vacancy occurs.

"Firemen and policemen shall be classified as provided in Section 2 of this ordi-

---

1. Many procedural requirements of this Section are omitted because compliance therewith is conceded.

nance, and shall be under civil service protection except the Chiefs of the Fire Department and Police Department.

"Said Chiefs of said Departments shall be appointed by the City Manager of the City of Austin, and confirmed by the City Council.

"Section 2. The Firemen and Policemen employed in the City of Austin shall be classified and paid as follows:

"Class 1: First year firemen and policemen, $220.00 per month.

"Class 2: Second year firemen and policemen, $230.00 per month.

"Class 3: Third year firemen and policemen, $240.00 per month.

"Class 4: After Third Year—hoseman, ladderman, and patrolman, $250.00 per month plus $10.00 per month additional for each 5 years service up to 15 years.

"Class 5: Driver, inspector, mechanic's helper, and detective, $265.00 per month plus $10.00 per month additional for each 5 years service up to 15.

"Class 6: Captain (fire), fire alarm operator, and police sergeant, $280.00 per month plus $10.00 per month additional for each 5 years service up to 15.

"Class 7: District chief (fire), master mechanic, and police lieutenant, $300.00 per month plus $10.00 per month additional for each 5 years service up to 15.

"Class 8: Assistant Chief (fire), fire marshall, and police captain, $350.00 per month plus $10.00 per month additional for each 5 years service up to 15.

"Class 9: Chiefs of Fire and Police Departments, $450.00 per month plus $10.00 per month additional for each 5 years up to 15.

"Section 3. Any employee classified herein who shall work in excess of 144 hours in two consecutive weeks shall be paid for the over time at the rate of time and one half for the duties performed.

"The following six holidays shall be added to the fifteen (15) day vacation: January 1st, February 22nd, July 4th, Labor Day, Thanksgiving and Christmas."

The Firemen's and Policemen's Civil Service Act,[2] mentioned above, has been adopted at an election held by the City of Austin.

Appellants' brief contains four points: First: That the Policemen's and Firemen's Civil Service Act is void and that the proposed ordinance being largely based on such Act is likewise void. Second: That the proposed ordinance is inconsistent with various general laws of this State and hence is void. Third: That the subject-matter of the proposed ordinance is vested exclusively in the City Council of Austin. Fourth: That the subject-matter of the proposed ordinance is purely administrative and executive in nature and is not a proper subject of initiative and referendum provisions of the Austin City Charter.

We have concluded that (a) the proposed ordinance is subject to the initiative and referendum provisions of the Austin City Charter, and (b) we are presently not concerned with the validity or invalidity of the proposed ordinance.

The main purpose of the proposed ordinance is to classify members of the Fire and Police Departments of the City of Austin and to provide pay scales for each class.

Appellants say that this is an administrative matter and appellees describe it as legislative. As to whether it is one or the other seems to make a difference. Denman v. Quin, Tex.Civ.App., 116 S.W.2d 783, San Antonio C.C.A. Writ Ref. This very case, later discussed, says, however, that " * * * an ordinance fixing salaries to be paid city officials is a practical example of those which are referable * * *." 116 S.W. 2d 786,

We believe this question to be authoritatively determined by the decision in Taxpayers' Ass'n v. City of Houston, 129 Tex.

2. Art. 1269m, Vernon's Ann.Civ.St.

627, 105 S.W.2d 655, 657. We quote from that opinion: "As shown by section 1 of article VIIb, supra, of the city's charter, its initiative and referendum provisions are confined to legislative matters only. This is true, because such section by its express terms only gives the qualified voters of the city the power to legislate. The association et al. contend that these ordinances are invalid because they involve a matter that is purely administrative and not legislative. We overrule this contention. It is true that in many instances, and under certain conditions, the fixing of salaries is administrative in its nature. In spite of this, such matter also appeals to the lawmaking power. The creation of an office is a legislative function. If the legislative arm of the government has the power to create an office and prescribe its duties, it must surely follow that it has the power to prescribe its emoluments. Furthermore, we think the people generally are vitally interested in having their officers and employees paid a living wage, and a wage commensurate with the duties involved."

In reaching our second conclusion the way has been more strenuous.

▉ Courts are without power to interfere with an election even though the election may be void. City of Austin v. Thompson, 147 Tex. 639, 219 S.W.2d 57. Should then an administrative official have the power to obstruct the holding of a void election by refusing to perform a purely ministerial duty?

▉ There is no question but that the duties which appellants are required to perform in calling and holding an election in response to a proper initiative petition are purely ministerial in character and do not involve the exercise of any discretion on their part.

Appellants' position is that they may, nevertheless, question the validity of the proposed ordinance before submitting it to the electors, and cite the case of McCarty v. Jarvis, Tex.Civ.App., 96 S.W.2d 564, Fort

Worth C.C.A. Writ Dis., as controlling. We do not so consider it. That case was brought to compel Fort Worth city officials to submit at an election a proposed amendment to the city charter, and the point upon which the decision turned was, in our opinion, that applicants did not have a justiciable interest enabling them to maintain the suit. The court did, by way of dictum, say that since the amendment if adopted would be void, the court would not make a vain order. We have examined all of the Texas authorities cited in support of this statement and find that with the exception of McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105, and Holman v. Pabst, Tex. Civ.App., 27 S.W.2d 340, Galveston C.C.A. Writ Ref., mandamus in election matters was not involved.

In the Wozencraft case a writ of mandamus was sought to compel the proper officials of Dallas to submit a proposed franchise to a vote of the people under referendum provisions of the city charter. The court held that under the general statutes the governing body alone had the power to grant franchises and that the general statutes limited a referendum election to an ordinance *granting* a franchise and since the council had *refused* to grant the franchise a referendum was not authorized and the mandamus was denied.

In the Pabst case it was held that the Commissioners Court of Galveston County, in a mandamus suit, could question the validity of a law requiring the court to call a stock election.

In addition to Texas authorities, discussed above, the court in the Jarvis case cited cases from Nevada and Missouri[3] in support of its statement that the court would not require the calling of an election if the amendment to be voted on would be void if adopted. Appellants in their brief have, in support of this same rule, likewise cited the same cases from Missouri and Nevada, as well as cases from California, Kentucky, Ohio and Louisiana.[4]

3. State ex rel. Davies v. White, 36 Nev. 334, 136 P. 110, 50 L.R.A.,N.S., 195; State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066.

4. Myers v. Stringham, 1925, 195 Cal. 672, 235 P. 448; Beierle v. City of Newport, 305 Ky. 477, 204 S.W.2d 806; In State ex rel. Werner v. Koontz, 153 Ohio St..

We believe there is a very logical reason for the holdings in the several states just mentioned. In every one of those states, except Ohio, and as to which we are uninformed as to the local law, the courts hold that a void election may be enjoined by the courts in order to prevent the unauthorized expenditure of public funds.[5]

If a void election may be enjoined to prevent an unlawful expenditure of public money then by better reasoning a court would not order a void election to be held at public expense.

The rule is otherwise in Texas. City of Austin v. Thompson. In that case the court said:

"This court has adopted the view that it is beyond the power of a court of equity to enjoin an election or any incident to it, although the election may be called without authority and therefore absolutely void. The fundamental reasons for this rule of decision, as stated in City of Dallas v. Dallas Consolidated Electric Street Railway Company, 105 Tex. 337, 341, 148 S.W. 292, 294,[6] are worth repeating here:

" 'Elections belong to the political branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the courts to determine their validity, and in cases of invalidity to protect property rights which may be wrongfully impaired if their result is suffered to become effective and is sought to be enforced; but a proper deference for their respective powers that is imposed upon the several departments of the government should constrain the courts to caution and certainty when their authority is invoked against the determination of the popular will. It should always be remembered that the separation of the great powers of government into different and distinctive departments, each independent in its own sphere and protected by constitutional limitations that neither can transcend but which all must respect, is the distinctive feature of our system, and its accomplishment is the fundamental fact of our history. * * *' " [147 Tex. 639, 219 S.W.2d 59.]

The concluding portion of this paragraph, not quoted in the Thompson case, is:

" * * * The preservation of these powers in their full integrity and independence is a matter of common concern, for upon the freedom of their exercise depend alike public repose and private security, and neither will long endure if their abridgement be permitted or encouraged. While the courts will not and should not hesitate to discharge their responsible functions in all cases that fall within the judicial authority, to them peculiarly is committed the duty of emphasizing the obligation that rests upon each department of the government to observe its rightful limits, and for this reason it is the more incumbent upon them not to exceed their own."

We make the following further quotation from the City of Dallas case:

"But it is urged by the able counsel for the defendant in error that this was an illegal election, and this ordinance is a void ordinance because of the absence of any authority in the electorate of the city of Dallas to initiate or adopt legislation of the character embraced in the ordinance; that, while the general rule is as here stated, it has reference only to such elections as it is competent for the electorate to hold, and only to such legislation as the legislative body is authorized to enact. It is a sufficient answer to this contention to say that the validity of this ordinance is one question, and the right of the electorate of the city to hold the election and have the election completed by the ascertainment of the result through a canvass of the votes by the board of commissioners, in the exercise of

---

325, 91 N.E. 473; In State ex rel. Bussie v. Fant, 216 La. 58, 43 So.2d 217.

5. Harnett v. Sacramento County, 195 Cal. 676, 235 P. 445; City of Murray v. Irvan, 170 Ky. 290, 185 S.W. 859; Baum v. City of St. Louis, 343 Mo. 738, 123 S.W.2d 48; Layton v. Mayor, etc., of

Monroe, 50 La.Ann. 121, 23 So. 99; Caine v. Robbins, 61 Nev. 416, 131 P.2d 516.

6. In this case an ordinance regulating street railways had been voted on and an injunction to restrain city officials from canvassing results of the election on the ground the ordinance was void was denied.

their political power without restraint from the courts, is another, the rightful exercise of which right was not dependent upon the validity of the ordinance voted on at the election. Whatever view may be taken in respect to the validity of the ordinance, the election was had under color of authority, for this court has heretofore held that ordinances may be initiated and adopted under this provision of the city charter. Southwestern Tel. & Tel. Co. v. City of Dallas [104 Texas, 114], 134 S.W. 321. Are the courts at liberty to restrain the holding of an election of this character because the measure proposed to be voted on is invalid as a legal enactment? If so, it will become necessary that the validity of such proposed enactments be submitted to and decided by the courts in advance, and that, under such regime, the courts determine for the people beforehand whether they have the lawful right to hold the election, for, under this doctrine, the election may be stayed by the courts until the validity of the proposed legislation is by them judicially determined, which in its operation and result would be the same as an adjudication by the courts as to whether the election may be rightfully held. In such event the courts would be resolved into mere moot tribunals for the trial of causes affecting no property rights, with no real interest at stake and no substantial issue joined, but, at most, only sitting in judgment upon legislation that might never be enacted into law and anticipating results otherwise that might never happen.

"It might as well be argued that a court of equity may enjoin the Legislature from enacting an unconstitutional statute, or the presiding officer of either branch of the Legislature from canvassing the vote of such body thereon and declaring the result, or the Governor from approving it. Instances may occur when a Legislature will usurp judicial or executive power and attempt legislation which it is wholly without authority to enact, just as it is here contended that this electorate was without authority to enact this ordinance. But in such case would it be contended that the courts were clothed with the power to enjoin such legislation or acts necessary to its comple-

tion as such? Such a proposition can no more be maintained than would such a perversion of judicial power be tolerated. The political power of the state may not be thus transferred to the courts. They are neither designed to exercise that power, nor equipped to control it. They exist only to give effect to the judicial power of the government, and to maintain and administer its judicial authority. To interfere with the enactment of legislation is not within their province. Their remedies lie ready, but at rest, until proper occasion demands their use. They are not available against void legislation enacted under color of authority until its enforcement, as distinguished from its enactment, is attempted or threatened to the destruction or impairment of property rights. Until then in the eyes of the law there is no invasion of such rights, and without such invasion of rights there can be no lawful exercise of judicial authority.

"The law does not assume that sworn officials will attempt the enforcement of an invalid law. Its presumption is to the contrary, and it therefore awaits such attempted or threatened enforcement before it moves at the instance of parties in interest. If this ordinance is a nullity, as is here contended by the defendant in error, the canvassing of the returns of this election will not quicken it with life and virtue. At all events, it is not a binding enactment until its enactment is completed, and, until it is a binding enactment, it retains its relationship to the political power, and is immune from the process of judicial authority.

\* \* \* \* \* \*

Many cases have been cited from other jurisdictions, some of which sustain the position of the defendant in error; but we believe the sounder doctrine is that to which the courts of this state have heretofore adhered and from which we are not constrained to depart. We are unwilling to establish the precedent and write it down as the law of this state that the courts in such cases may in this manner predetermine the validity of legislation, and assume such control of the exercise of political power." [105 Tex. 337, 148 S.W. 294.]

We cannot read this clear and vigorous language of Mr. Justice Phillips unim-

pressed that as a corollary to the rule of nonjudicial interference with elections the courts are duty bound to prevent all interference with the political power of the people. What do the people gain by the stayed hands of the courts if a ministerial officer is given the power denied the courts?

■ Ministerial officers are not exponents of the law. They are not free to perform or not perform clear legal duties as their fancy dictates. They are not immune from compulsory process as to these duties even as they relate to election matters.

■ The law is clear that " * * * if the uncontradicted facts show that a relator has the right to exact performance by public functionaries of duties imposed on them by law, his appropriate remedy is by writ of mandamus, * * *" and " * *· * the courts will extend relief by mandamus to compel the holding of an election when the duty is clearly obligatory and has been disregarded by the officers entrusted by law with its performance." 16 Tex.Jur., Elections, Sec. 158. See also 28 Tex.Jur., p. 561.

In Kimberly v. Morris, 87 Tex. 637, 31 S.W. 808, 809, mandamus was held the proper remedy to compel the commissioners court to order an election upon a voters' petition because since the statute authorized the election "and if the court, upon its refusal to make the order, cannot be compelled by mandamus, it leaves them (petitioners) without a remedy for the enforcement of the right."

We do not minimize the difficulty we have had in harmonizing all of the Texas decisions cited to us by the parties. We believe those relied upon by appellants and which without close study might appear opposed to the views expressed herein fall within one or the other of these categories: (1) cases which hold that mandamus will not lie to compel an election if the proposed law is not legislative in character or for other reasons is not of such nature as to come within the initiative provisions of the law; (2) those cases which permit ministerial officers to question the validity of the

law which requires performance of the duties involved;[7] (3) cases which involve the validity of an ordinance *after* it is adopted.

The Wozencraft case, discussed above, falls in the first classification of cases, and the Pabst case, also discussed above, falls in the second classification of cases.

The case of Denman v. Quin, supra, was one in which mandamus to compel San Antonio officials to open a register to enable voters to initiate a referendum for the purpose of repealing an ordinance levying an ad valorem tax for a given year was denied. The basis of this decision was that the ordinance was not subject to a referendum because it was not of a legislative character. This case is within our first case classification.

The following cases, cited by appellants, fall in our third classification: Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321; City of Dallas v. Dallas Consolidated Electric Street Ry. Co., Tex.Civ.App., 159 S.W. 76, Dallas C.C.A. Writ Ref.; Lindsley v. Dallas Consol. St. Ry. Co., Tex.Civ.App., 200 S.W. 207, Dallas C.C.A.; Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S.W. 1106; Taxpayers' Ass'n v. City of Houston, supra.

■ If we are correct in holding that the proposed ordinance is legislative in character and one coming within the initiative and referendum provisions of the Austin City Charter, then, in our opinion, there is no authority in this State supporting the refusal of appellants to proceed with calling and holding an election as requested by the requisite number of Austin City Electors.

Opposing this lack of authority there are the well settled rules of mandamus and the opinion of the Supreme Court in City of Austin v. Thompson, supra, and the authorities therein cited. Upon these rules and principles of these cases has our decision rested. Particularly have we striven to heed the admonition of Justice Phillips in speaking of the separation of the several powers of government, which we re-quote: "The preservation of these powers in their

7. These cases are clearly distinguishable from the instant case where appellants do not question the validity of the initia-tive provisions of the charter but only question the validity of the proposed ordinance.

full integrity and independence is a matter of common concern, for upon their freedom of exercise depend alike public repose and private security, and neither will long endure *if their abridgement be permitted or encouraged."*

We neither encourage nor permit abridgement of the political power of the people of Austin.

The judgment of the trial court is affirmed.

Affirmed.