## DENMAN et al. v. QUIN et al.

### No. 10444.

Court of Civil Appeals of Texas.

San Antonio.

May 6, 1938.

Rehearing Denied May 9, 1938.

Boyle, Wheeler, Gresham & Terrell and H. M. Parker, all of San Antonio, for appellants.

Dodson & Ezell, Brooks, Napier, Brown & Matthews, and T. D. Cobbs, Jr., all of San Antonio, for appellees.

SMITH, Chief Justice.

Leroy G. Denman and others, qualified taxpaying voters of the city of San Antonio, brought this action in behalf of themselves and of all others in the named class, against the city of San Antonio, its Mayor, commissioners, and clerk, to compel them, by mandamus, to proceed under the provisions of section 131 of the City Charter to open a register to enable the voters in said class to sign said register in initiation of a referendum to veto an ordinance enacted by the Board of City Commissioners on March 3, 1938, levying an ad valorem tax of $1.90 on the $100 property valuation, for the fiscal year of 1937–38.

After a hearing on the merits, pending rulings on the pleadings, the trial judge sustained, not only all the numerous special exceptions to the plaintiffs' petition, but the general demurrer thereto as well, and, upon plaintiffs' refusal to amend, dismissed the suit. Leroy G. Denman and his associates have appealed. They will be referred to herein as plaintiffs, and appellees as defendants, as in the court below, and the appeal will be decided upon the question of the sufficiency of plaintiffs' pleadings as against the general demurrer.

■ It is conceded that the city of San Antonio is a home-rule city, operating under the so-called Home Rule Amendment to our State Constitution, art. 11, § 5, and that the powers of the city are limited only, but certainly, by the provisions of the Federal and State Constitutions and the general laws of the state.

Under the provisions of article II of the charter of the city of San Antonio, the Board of City Commissioners are granted the power and charged with the duty to care for, manage, and control the finances of the city, and provide for payment of its debts and expenses. To that end, under the provisions of article III of the charter, the board are given the power, and the duty is expressly imposed upon them, to annually levy and collect an ad valorem tax for general and special purposes, not to exceed $2.25 in any one year upon the $100 valuation, "according to the last approved assessment roll of the City."

In addition to charter provisions granting to the board the power, and enjoining upon them the duty, to annually assess property values, and annually levy an ad valorem tax according to that ascertained valuation—and by that process authorizing and directing them to meet the city's fiscal obligations—the general laws of the state, known as the "Budget Law," specifically provide the processes and procedure by which the board shall exercise the powers and perform the duties prescribed by the charter. Article 689a—13, et seq., Vernon's Civ.Stat., Acts 1931, 42d Leg., c. 206, p. 339, §§ 14, 15, 16.

It is provided in section 27 of the charter that "each year, immediately before the taxes are levied," the Mayor shall submit to the Board of Commissioners "an annual budget of the current expenses of the City."

Cumulative, and in elaboration of, in so far as not inconsistent with, the charter provision, it is provided in section 14 of the budget statute, that the Mayor "shall prepare each year a budget to cover all proposed expenditures of the Government of said city or town for the succeeding year. Such budget shall be carefully itemized so as to make as clear a comparison as practicable between expenditures included in the proposed budget and actual expenditures for the same or similar purposes for the preceding year. The budget must also be so prepared as to show as definitely as possible each of the various projects for which appropriations are set up in the budget, and the estimated amount of money carried in the budget for each of such projects. The budget shall also contain a complete financial statement of the city, town or village, showing all outstanding obligations of such city, town or village, the cash on hand to the credit of each and every fund, the funds received from all sources during the previous year, the funds available from all sources during the ensuing year, the estimated revenue available to cover the proposed budget, and the estimated rate of tax which will be required. * * *"

It is provided in section 15 of the act that: "Said budget so to be prepared by such Mayor or City Manager shall be filed with the Clerk of such city, town or village

not less than thirty (30) days prior to the time the Board of Commissioners or Council of such city, town or village makes its tax levy for the current fiscal year, and such budget shall be available for the inspection of any taxpayer."

It is provided in section 16 of the act that after the public notice therein prescribed, and in not less than fifteen days after the budget is filed and fifteen days "prior to the time said Board *. * * makes its levy," a public hearing shall be had before the commissioners, at which every citizen shall have the right to be heard; that after such hearing the board shall pass upon the proposed budget, make such changes therein as "in their judgment the law warrants and the best interests of the taxpayers of such city * * * demands"; that when the "budget has been finally approved by such Board of Commissioners, or Council, the budget as so approved shall be filed with the Clerk of such city, town or village, and taxes levied only in accordance therewith, and no expenditure of the funds of such city, town or village shall thereafter be made except in strict compliance with such adopted budget. * * * "

Now, in this case presumably, in full compliance with the requirements of ·charter and statute, the Board of Commissioners adopted its annual budget for the fiscal year, and fixed an appropriate tax levy to meet the financial requirements of the city for the ensuing year in accordance with the budget so adopted, and, having arrived at and fixed such levy at $1.90 on each $100 valuation, passed an ordinance making said levy at $1.90, which was well within the charter authority limiting the power of the city to a maximum levy of $2.25. The levy for the previous year was $1.45, and the new levy therefore had the effect of increasing the levy by .45 on each $100 valuation. The ordinance here in question was passed on March 3, 1938, with the following emergency clause: "Whereas, an emergency is apparent for the immediate preservation of public peace, health and safety, to-wit: to preserve the financial and borrowing credit of the City to secure funds for maintaining the necessary functions of government, and pay the debts of the City, that requires this Ordinance to become effective at once; therefore upon the passage of this Ordinance by a vote of four-fifths (⅘) of the Board of Commissioners, it shall be effec-

tive from and after the date of its passage as made and· provided by the Charter of the City of San Antonio, Texas."

Thereafter, on March 10th, there was presented to the Board of Commissioners a petition, conceded to be signed by the requisite number of qualified petitioners, protesting said ordinance and demanding a referendum thereon, as provided in section 131 of the City Charter, which section is as follows: "Section 131. No ordinance passed by the City Council or Commissioners shall go into effect before the expiration of ten days from the time of its final passage, except when otherwise required by the Federal Laws or the State Laws, or by the provision of this Charter, and except an ordinance for the immediate preservation of public peace, health or safety, which contains a statement of its urgency and is passed by a four-fifths vote of the Commissioners;· and if during said ten days a petition signed by ten per cent of the votes cast for Mayor of the last preceding general election protesting against the passage of such ordinance shall be presented to the Commissioners, the same shall thereupon be suspended from going into effect, and the Commissioners shall immediately cause to be opened a register which shall show that the same is opened for the purpose of permitting voters to register their protest against the passage of said ordinance proposed in the petition theretofore filed. Said register shall remain in the City Clerk's office accessible to the citizens at all times between the hours of 9 a. m. and 7 p. m. daily, except Sundays, and any voter desiring to register shall do so by signing said register in person. He shall before signing said register exhibit his poll tax receipt or receipt showing that he is a qualified voter in said City. Said register shall remain open for twenty (20) days and if at the expiration of such time qualified voters to the number of 25 per cent of the votes cast for Mayor at the last preceding general election of the City of San Antonio shall have signed said register protesting against the passage of said ordinance, it shall be the duty of the City Council or Commissioners to reconsider such ordinance, and if the same is not entirely repealed, the City Council or Commissioners shall submit the ordinance to a vote of the people, as provided in Section 120, either at the next general election or at a special election to be called for that purpose, and such ordinance shall not then

go into effect or become operative, unless a majority of the qualified voters, as above recited, of the City of San Antonio, shall vote in favor of the same. * * *"

The petition having been presented to the board, the city clerk verified the signatures thereto, as provided in section 131, but the board, nevertheless, on March 22, rejected the petition by refusing to open a register for the further prosecution of the referendum, as prayed for in said petition. This suit is, therefore, for a writ of mandamus to require defendants to proceed to open such register in order that those qualified citizens desiring to do so may have that opportunity of registering their opposition to said ordinance.

■ We are of the opinion that the trial judge did not abuse his discretion in denying the relief prayed for by plaintiffs.

■ Broadly speaking, we are of the opinion that it was not intended by the electorate, in adopting section 131 of the charter, that the right of referendum therein conferred should apply to every ordinance, of whatsoever nature, which might be enacted by the Board of Commissioners, or that any and every ordinance so enacted would be subject to nullification by the processes of referendum.

■ It is obvious that ordinances intended by the electorate to be subject to referendum are those which are legislative in character, as distinguished from those of an administrative or executive nature; legislative, as relates to subjects of a general, or permanent, character, as distinguished from those which are only transitory, or temporary, or routine, and therefore administrative or executive, in their purpose and effect. An ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents is purely legislative in character, and referable, but an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character, and not referable. 30 Tex.Jur. p. 293, § 161; 19 R.C.L. p. 909, § 207; McQuillan Mun.Corp., 2d Ed., p. 907, § 366; Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321; Taxpayers' Ass'n v. City of Houston, Tex. Sup., 105 S.W.2d 655; Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S.W. 1106; State ex rel. Keefe v. City of Petersburg, 106 Fla. 742, 144 So. 313, 671, 145 So. 175; Monahan v. Funk, 137 Or. 580, 3 P.2d 778.

■ Pursuing the question further, an ordinance fixing salaries to be paid city officials is a practical example of those which are referable; it being a permanent general law empowering the Board of Commissioners to levy taxes and appropriate the public funds to put that law into execution; while an ordinance levying taxes to raise funds for the payment of the salaries so authorized in the general, or permanent, provision, is a fair example of that character of ordinances which, because of their very nature, cannot be deemed referable. It seems to be perfectly obvious, too, that ordinances which must rest upon minute investigation of facts and figures, or application of expert, skilled, or technical knowledge, or upon audits, or upon close and careful study or ascertainment or adjustment of masses of facts and figures, such as the elements entering into matters of rate making, cannot be efficiently initiated or passed upon by the public en masse, however intelligent and patriotic they may be.

■ It seems obvious that when the ordinance in question here is tested by the rules stated, it falls at once into the class of ordinances which are not deemed referable to a vote of the people. It is in no sense a declaration of a new policy or purpose, or a permanent or general law for the guidance of the public or their officers or agents, or authorizing the expenditure of public funds for any purpose not previously fully authorized by law. It is, rather, an ordinance putting into execution previously-enacted laws authorizing the levy of taxes for the payment and servicing of existing contractual obligations of the city, and the maintenance and operation of the affairs and business of the municipality. Presumably, the city's budget had been arrived at and made up in strict accordance with the law, by the Board of Commissioners. It must now be presumed that the board correctly ascertained the city's obligations and the cost of servicing them, and correctly estimated the expense of maintenance of the city's government and affairs during the fiscal year in question. That being true, there remained only the administrative duty of calculating the approximate amount of money required to meet those burdens, and fixing a tax levy sufficient to raise that amount. That was the

object and effect of the ordinance under attack here. That ordinance, which plaintiffs would have subjected to a referendum, and by that process passed upon by some 30,000 or more voters, consists of seventy-five paragraphs, each covering an item to be taken into consideration, in connection with all the others, in determining the rate of the tax to be levied, in order to raise the amount, previously ascertained, to support the government. Nearly every one of those items is an integral part of the whole of a complicated structure, every part of which must be consistent with and weighed against every other part. Obviously, the ordinance was not subject to the referendum invoked by plaintiffs in this case.

The judgment is affirmed.