**Virgil HANCOCK et al., Appellants,**

v.

**William H. ROUSE et al., Appellees.**

**No. 15419.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Jan. 23, 1969.

Rehearing Denied Feb. 13, 1969.

Gaines & Merrill, Charles P. Merrill, Kathryn V. Wolfer, Houston, for appellants.

Paul Strong, Houston, for appellees.

MacNaughton & McWhorter, W. A. MacNaughton, Houston, amicus curiae.

COLEMAN, Justice.

This is an action seeking an order requiring the City Council of the City of Bellaire to submit to an election a zoning ordinance proposed by an initiative petition and four zoning ordinances previously enacted by the Council, under Charter provisions concerning Initiative and Referendum Elections. The trial court denied the requested mandamus order and this appeal resulted.

The City of Bellaire is a Home Rule City. Article X of its Charter authorizes initiative, referendum and recall elections and provides the procedure to be followed in requesting such elections.

Section 5 of Article XII of the Charter specially authorizes the Council to enact zoning ordinances. The Charter provides that the City shall have such powers with reference to zoning as are granted by Title 28, Chapter 4, Article 10l1a to 1011j, together with all amendments thereto, of the 1925 Revised Civil Statutes of Texas.

Appellant has presented nine points alleging error on the part of the trial court in reaching certain conclusions of law and in making certain findings of fact. It is unnecessary to set out these various points since we are of the opinion that these ordinances, all relating to zoning, are not subject to the provisions of the Charter authorizing initiative and referendum elections.

In Glass v. Smith, 150 Tex. 632, 244 S. W.2d 645 (1952), the court held:

"* * * respondents being otherwise entitled to have the initiative election called and held, cannot be defeated in that right by the refusal of petitioners to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted. * * But to entitle respondents to a writ of mandamus on the ground that they have a legal right to have the election called and held and that petitioners are under a legal duty to order and to hold it, it is not enough that the subject matter of the proposed ordinance be legislative in character but it must also appear that the subject matter of the ordinance has not been withdrawn from the field in which the initiatory process is operative."

The Supreme Court recognized that the power of initiative and referendum is "the exercise by the people of a power reserved to them, and not the exercise of a right granted," and that such a reservation of

power in a city charter "should be liberally construed in favor of the power reserved." But the Court then said:

"Even so, the field in which the initiatory process is operative is not unlimited. * * * Accordingly, city charters frequently expressly limit the right of initiative to legislative matters. But even though a charter contains no such express limitation * * * the limitation is usually read into the charter by the courts. * * * The field where the initiatory process is operative may also be limited by general law. Article XI, Section 5 of our Constitution provides that no city charter shall contain any provision inconsistent with the general laws of this state. * * * Again, the field may be limited by the city charter itself. Other provisions of the charter may withdraw from the people the power under the initiative provisions to deal with a particular subject. The limitation by the general law or by the charter of the field in which the initiatory process is operative may be either an express limitation or one arising by implication. Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end.

"* * *

"In all the Texas cases called to our attention in which it has been held that the people of a municipality could not validly exercise a delegated legislative power through initiative proceedings, it will be found that authority to act was expressly conferred upon the municipal governing body exclusively, or there was some preliminary duty such as the holding of hearings, etc., impossible of performance by the people in an initiative proceeding, by statute or charter made a prerequisite to the exercise of the legislative power. Into this class fall the cases of McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105; Southwestern Telegraph & Telephone Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321;

Lindsley v. Dallas Consolidated St. Ry. Co., Tex.Civ.App., 200 S.W. 207; Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S.W. 1106; Denman v. Quin, Tex.Civ.App., 116 S.W.2d 783 (writ ref.)."

The Charter of the City of Bellaire provides that all of the powers granted to cities by Arts. 1011a to 1011j, inclusive, Texas Rev.Civ.Statutes, 1925, are adopted and "made a part of" the charter. Necessarily the charter also includes the restrictions of the legislative power of the city found in those articles.

Art. 1011b authorizes the "local legislative body" to divide the city into districts of "such number, shape, and area as may be deemed best suited to carry out the purposes" of the Act, and within such districts to regulate the construction, repair or use of building or land. It provides that all such regulations shall be uniform for each class or kind of building in a particular district.

Art. 1011c requires that such regulations be made in accordance with a comprehensive plan "and designed to lessen congestion in the streets; to secure safety from fire * * *; to provide adequate light and air; to prevent the overcrowding of land; * * * to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration * * * to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality, * * *."

Art. 1011d provides:

"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supple-mented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least 15 days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality."

Art. 1011e provides that such regulations, restrictions and boundaries may be amended or repealed, but that if the owners of 20% in area of the lots included in the change, or of certain lots located within 200 feet of the area involved in the proposed change, protest the change, the amendment "shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearing and official notice shall apply equally to all changes or amendments."

Art. 1011f provides that "in order to avail itself of the powers conferred by this Act," the city legislative body shall appoint a Zoning Commission, "to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein." A preliminary report of the commission is required and the commission must hold a public hearing before submitting its final report, and the city legislative body "shall not hold its public hearings or take action until it has received the final report of such Commission; * * *." This article also provides that written notice of all public hearings before the Zoning Commission on "proposed changes in classification" be sent to the owners of property within 200 feet of the property on which the change in classification is proposed.

These general laws, which have been incorporated by reference into the Charter of the City of Bellaire, contemplate that comprehensive zoning ordinances, and

**4**

ordinances having the purpose of changing, amending, or repealing such ordinances, will be enacted by the local legislative body, i. e., the City Council. This is clear from the requirement that this action must be preceded by a study made by the Zoning Commission after public hearings resulting in recommendations to the Council by the Commission, and by a public hearing before the City Council. While the City Council may authorize a joint public hearing, both the Zoning Commission and the City Council must give those interested the opportunity to attend a hearing. While the report of the Zoning Commission is advisory, the Council must await that report before taking final action. The preparation of a comprehensive Zoning Ordinance, which would meet the objectives set out in the statute, requires careful study, the accumulation of masses of detailed information concerning land use within the city, and is a matter concerning which the professional advice of one experienced in city planning would be most helpful. It would be very difficult to present the information necessary to evaluate a proposed Zoning Ordinance to the voters in an intelligible manner. See Denman v. Quin, 116 S.W.2d 783 (San Antonio Civ. App., 1938, error ref.); Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, 19 A.L.R. 1387 (1921).

Notice and hearing, as well as reference to the Zoning Commission, are also required before an ordinance adding to, changing or repealing the Comprehensive Zoning Ordinance can be enacted. In addition, in event of a proper protest, Art. 1011e requires passage by a three-fourths' majority of *all the members of the legislative body*. While the citizens of a city are acting in a legislative capacity when voting pursuant to the initiatory process, the qualified voters of such a city would not constitute a "legislative body". The words "legislative body" in Art. 1011e clearly refer to the City Council, and these words, when used in other sections of the same Act, and in Amendments thereto, will be presumed to have the same meaning.

These provisions of the general law, adopted into the Charter of the City of Bellaire, by implication, have withdrawn the subject of Zoning from the field in which the initiatory process is operative and have reserved this subject from referendum. Dallas Ry. Co. v. Geller, 114 Tex. 484, 271 S.W. 1106 (Tex.1925).

▆ The ordinance proposed by the petitions submitted to the City Council of Bellaire is an amendment to the Bellaire Zoning Ordinance. The provisions of the general law requiring notice and hearing cannot be complied with if the ordinance is submitted to an election. For a hearing to be meaningful it necessarily must be held before the body authorized to act in the matter. Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321 (Tex.1911). A zoning ordinance enacted by the City Council without the notice and hearing required by statute would be invalid and the power of the people to legislate directly is subject to the same limitations. Bolton v. Sparks, 362 S.W.2d 946 (Tex.1962). Since notice and hearing are clearly required by the Charter, and the general law of the State, as a prerequisite to the enactment of Zoning Ordinances, and since notice and hearing have no place in the process of legislating through initiative and referendum, the power of the people of Bellaire to legislate directly does not extend to the subject of zoning. State v. Donohue, 368 S.W.2d 432 (Mo.1963); Elkind v. City of New Rochelle, 5 Misc.2d 296, 163 N.Y.S.2d 870, Aff'd 5 N.Y.2d 836, 181 N.Y.S.2d 509, 155 N.E.2d 404 (1950); Hurst v. City of Burlingame, 207 Cal. 134, 277 P. 308 (1929); DeLatour v. Morrison, 213 La. 292, 34 So. 2d 783 (1948); City of Scottsdale v. Superior Court, 103 Ariz. 204, 439 P.2d 290 (1968).

The judgment of the Trial Court is affirmed.