NO. 07-06-0407-CR


NO. 07-06-0408-CR


NO. 07-06-0409-CR


NO. 07-06-0410-CR


NO. 07-06-0411-CR
 

NO. 07-06-0412-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



JUNE 21, 2007


______________________________



ELI EDWARDS, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;



NOS: 4294, 4295, 4296, 4297, 4298 & 4299; 



HON. STEVEN RAY EMMERT, PRESIDING


_______________________________



Opinion


____________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Eli Edwards (appellant) appeals his convictions for aggravated robbery and
aggravated kidnaping. Via three issues, he contends that the trial court erred by 1)
admitting evidence of an extraneous offense, 2) improperly defining the term "abduct" in
the jury charge and 3) entering an order requiring him to serve his six sentences
consecutively. We affirm the judgments as reformed.

Background
 

 Jimmy Maddox (Maddox) was at home with his wife and daughter when two masked
men broke through the front door. The men were armed with shotguns and told the group
to lay on the floor. Thereafter, they were threatened with death, moved to a cellar, and
bound with cords. So too was Maddox asked for money, and he disclosed to his assailants
where it could be found. Eventually, Maddox freed himself and the others in his family. 
He then noticed his Buick had been taken and called 911.

 Eventually, law enforcement officials encountered two individuals driving the Buick
and a chase ensued which resulted in the vehicle being abandoned. A search of the car
revealed items taken from the Maddox household plus various weapons. The next day
appellant was captured and arrested for the robbery. 

Issue One - Extraneous Offense Used to Show Identity


 In his first issue, appellant posits that the trial court erred in admitting evidence of
an extraneous offense. The evidence involved testimony about appellant having taken
weapons (shotguns) during a burglary in Oklahoma. Moreover, appellant was identified
as one of the burglars who took the shotguns. One or more of those very weapons were
later found in the Maddox Buick after the robbery and chase. This was of import to the
State because it helped identify appellant as one of the Maddox robbers; again, the
robbers wore masks and could not be identified through facial features. So, in the State's
view, evidence about the Oklahoma burglary and who was involved in it helped tie
appellant to the later robbery in Texas. Thus, the evidence allegedly was both relevant and
admissible under Texas Rule of Evidence 404(b). We agree and overrule the point.

 Finding in the Buick a shotgun appellant stole in Oklahoma has the propensity of
linking appellant to the Maddox robbery, given that a shotgun was used in the robbery. 
More importantly, it cannot be legitimately denied that the identity of the robbers was in
issue. Indeed, appellant, through his legal counsel, argued to the trial court that the
evidence of identity was very weak. So, the extraneous burglary, in general, and the
property taken during it, in particular, was relevant to an element in dispute. And, that the
Oklahoma offense may not have involved an act either identical or similar to the Texas
crime matters not for the identity between the criminal acts occurring in Oklahoma and
Texas were not important. Of import was the identity between the weapons taken in
Oklahoma, the ones used to rob the Maddox family and the ones later found in the car for
the weapons and appellant's tie to them is what identifies him as a robber. Thus, Page v.
State, 213 S.W.3d 332 (Tex. Crim. App. 2006), a case upon which appellant relies heavily
in attempting to show error, is inapposite. 

 Page dealt with an attempt to prove identity through comparing a series of acts. In
that situation, one cannot dispute that the acts have to be sufficiently similar to warrant an
inference that the person who committed some committed all. Here, however, the acts
undertaken during both offenses matter not for the focus lies on the identity between the
weapons taken by appellant during one offense and later used at another. So, because
evidence of extraneous offenses are admissible to prove identity, Tex. R. Evid. 404(b);
Johnston v. State, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004), and evidence of the
Oklahoma burglary furthered that purpose at bar, we cannot say that the trial court abused
its discretion in permitting several witnesses to disclose it at trial. (1) See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (stating that a trial court errs viz its
decisions to admit evidence when it abuses its discretion and the decision falls outside the
zone of reasonable disagreement).

Issue Two - Jury Charge


 In his second issue, appellant contends that the trial court's failure to properly define
"abduct" in its jury charge caused him egregious harm. That is, the abstract definition of
"abduct" included in the charge differed from the manner in which the term was used in the
indictment. However, its description in the application paragraph of the charge was
identical to that in the indictment. (2) So, while the definition did not track the indictment, the
application paragraph did, and appellant did not object to the circumstance. We overrule
the issue.

 The record evidence supported appellant's conviction of the offense as described
in the indictment. Furthermore, the application paragraph tracked the indictment, and the
words in the application paragraph were plain and easily understood. Medina v. State, 7
S.W.2d 633, 640 (Tex. Crim. App. 1999) (holding that where the application paragraph
correctly instructs the jury, an error in the abstract instruction is not egregious); Plata v.
State, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), overruled on other grounds, Malik v.
State, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (holding that reversal is required when
an accurate definition in the abstract definition is necessary to implement the application
paragraph); Williams v. State, No. 01-06-00037-CR, 2007 Tex. App. Lexis 1158 (Tex. App.
-Houston [1st Dist.] February 15, 2007, no pet. h.) (holding that when the application
paragraph correctly instructs the jury, a superfluous abstract definition is not egregious).
Thus, despite the definition, the jury nevertheless was told in unambiguous language that
it could not convict unless it found appellant guilty as charged in the indictment. Given
these circumstances, we do not find that appellant was egregiously harmed by the
purported error. 

Issue Three - Order Requiring Sentences to Run Consecutively


 Appellant contends that the trial court erred in entering an order wherein it "stacked"
appellant's sentences. In other words, appellant would be required to serve the six
sentences consecutively as opposed to concurrently. The State concedes this point and
asks us to reform the six judgments. We agree and sustain the issue. 

 Accordingly, the judgments of the trial court are reformed to delete the accumulation
orders. Robbins v. State, 914 S. W.2d 582, 584 (Tex. Crim. App. 1996). As reformed, the
judgments of the trial court are in all other respects affirmed. 


 Brian Quinn

 Chief Justice


Publish.
1. Appellant does not raise Texas Rule of Evidence 403.
2. The trial court charged the jury as follows: "'abduct' means to restrain a person with intent to prevent
his/her liberation by using or threatening to use deadly force." So too did it state that "'restrain' means to
restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by
moving the person from one place to another or by confining the person." Through the application paragraph,
it then informed the jury of the following:


 . . . if you find from the evidence beyond a reasonable doubt that on or about the 12th day of
March, 2006 in Wheeler County, Texas, [appellant], did then and there, intentionally or
knowingly abduct []Maddox, by restricting the movements. . . by confining him, with the intent
to prevent [] liberation, secreting or holding [] in a place where [] was not likely to be found,
and [appellant] did then and there use or exhibit a deadly weapon, to wit: a gun, during the
commission of said offense, . . . .



="text-decoration: underline"> Authority also holds that though the power may be recognized at the local level it
may nonetheless be restricted by the State's general laws. Glass v. Smith, 244 S.W.2d
at 649. Indeed, our Texas Constitution provides that neither a city charter nor an ordinance
may contain any provision inconsistent with the Constitution or the general laws enacted
by the state legislature. Tex. Const. art. XI, §5; Glass v. Smith, 244 S.W.2d at 649. Yet,
logically, that the charter provisions and ordinances are subject to the general laws of this
state also means that this state's general laws may permit what a charter prohibits. Along
that line, we note Texas case authority that historically prohibited the use of initiative and
referendum in the arena of zoning. E.g., San Pedro North, Ltd. v. City of San Antonio, 562
S.W.2d 260 (Tex. Civ. App.--San Antonio 1978, writ ref'd n.r.e.); Hancock v. Rouse, 437
S.W.2d 1 (Tex. Civ. App.--Houston [1st Dist.] 1969, writ ref'd n.r.e.). However, when those
opinions were issued, Texas had no statute touching upon the subject. Indeed, the San
Pedro court so acknowledged. San Pedro North, Ltd. v. City of San Antonio, 562 S.W.2d
at 262 (stating that the Zoning Enabling Act contained no provisions relating to initiative
and referendum). That situation changed in 1993 when our legislature added §211.015
to the Texas Local Government Code. 

 Upon enactment of §211.015, referendum was interjected into the fray. The
problem before us concerns the extent to which referendum is available as a means of
repealing a municipality's attempt to re-zone an area. If we conclude that the statute
enables Fehr and Goss to prosecute their petition, the Canyon City Charter must give way
to it, as must the decisions in San Pedro and Hancock. 

 Section 211.015(a) states: 

 a) Notwithstanding other requirements of this subchapter, the voters of
a home-rule municipality may repeal the municipality's zoning
regulations adopted under this subchapter by either:


 (1) a charter election conducted under law; or


 (2) on the initial adoption of zoning regulations by a municipality,
the use of any referendum process that is authorized under the charter of the
municipality for public protest of the adoption of an ordinance. [Emphasis
added].


* * *



Tex. Local Gov. Code Ann. §211.015(a) (Vernon 1999). In turn, subsection (e) of the
same section provides that:

 e) The provisions of this section may only be utilized for the repeal of a
municipality's zoning regulations in their entirety or for determinations of
whether a municipality should initially adopt zoning regulations, except the
governing body of a municipality may amend, modify, or repeal a zoning
ordinance adopted, approved, or ratified at an election conducted pursuant 

 to this section. [Emphasis added].


Id. at §211.015(e). 

 As can be seen, §211.015(a) authorizes the repeal of zoning regulations adopted
by a municipality. Furthermore, the repeal may occur in one of two ways. That is, it may
be through a general charter election or by popular referendum (assuming the city charter
allows for referendum as a means of protesting the adoption of an ordinance). No one
contends that the procedure invoked by Goss and Fehr is a charter election. So, we need
not consider that avenue. Instead, the dispute implicates the second means of protesting
zoning ordinances. And, to the extent that the means utilized is referendum under
§211.015(a)(2), the avenue is available with regard only to the initial adoption of the
regulations. 

 Now, the question arises as to what is meant by the "initial adoption" of the
"regulations." Goss and Fehr posit that it refers to the time when any particular zoning rule
is enacted or amended irrespective of whether zoning regulations previously existed. On
the other hand, Canyon argues that the statute allows for popular vote only when the local
governing body adopts zoning regulations for the first time, i.e. when it adopts a body of
regulations when none previously existed. To decide who is correct, we rely on various
directives regarding statutory construction.

 According to the Supreme Court, our goal is to give effect to the legislature's intent. 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999). In
garnering that intent, we first look to the plain and common meaning of the words
incorporated in the statute. Id. So too are we to read the particular provision in context;
that is, we must read the statute as a whole. Marcus Cable Associates, L.P. v. Krohn, 90
S.W.3d 697, 706 (Tex. 2002). With that said, we address the statute at hand.

 As mentioned above, §211.015(a)(2) contains the phrase "on the initial adoption." 
Yet, that is not the only time the word "initial" or a derivative thereof is used in the statute. 
The legislature mentions it in subsection (c) when again speaking of the "initial adoption
of zoning regulations." It also alludes to it in subsection (e). The latter tells us when the
avenues created by §211.015 may be sojourned and one such time is when the
municipality is determining if it should "initially adopt zoning regulations." Given that the
plain or common meaning of the word "initial" encompasses the idea of the first or the
beginning, it is clear that the legislature intends for §211.015 to be utilized only when the
municipality attempts to create and impose, for the first time, upon its citizenry a body of
zoning ordinances when or where none previously existed. And, the context of the statute
bears out this interpretation. For instance, in subsection (b) of §211.015, we are told that
the municipality may opt to submit the zoning regulations for repeal by popular vote, but
the ordinances must be submitted in their "entirety." Tex. Local Gov. Code Ann.
§211.015(b) (Vernon 1999). Virtually identical language appears in subsection (e) through
which we are told that the avenues created in §211.015 can be used only to repeal the
regulations "in their entirety." Plainly, the word "entirety" means "all." Thus, the focus of
the legislation is not on the piecemeal repeal of particular zoning ordinances but rather on
the repeal of all zoning laws. 

 So, the procedure developed by the legislature through §211.0015(a) and (e) can
be best characterized by allusion to a phrase oft uttered by Deputy Barney Fife. To the
extent a dispute about zoning arises, the legislature intended to "nip it . . . nip it in the bud." 
The proverbial "bud," for purposes of zoning, is represented by the first ordinances enacted
by the city. And, to successfully "nip" the dispute surrounding their imposition on the local
populace, they had to be proffered for rejection in toto; "all or nothing," according to the
legislature. And, in so constructing the statute, the legislature effectively did two things. 
First, it modified Hancock and San Pedro to the extent they indicated that initiative and
referendum could not be used to repeal zoning ordinances. Second, it restricted the use
of initiative and referendum to the time and to the regulations described in the statute. 
Referendum, initiated by the voters, could not be used to vitiate such ordinances
piecemeal. (1) Nor could it be used after the first ordinances survived with or without attack. 

 Fehr and Goss, however, posit otherwise and do so by relying upon §211.002 of the
same Local Government Code. According to that provision, the phrase "adoption of a
zoning regulation" also includes the "amendment, repeal, or other change of a regulation
. . . ." Tex. Local Gov. Code Ann. §211.002 (Vernon 1999). And, their argument goes,
if the adoption of zoning regulations also includes amendments thereto, then logically
§211.015(a)(2) must also encompass the amendment to previously existing ordinances. 
We disagree for the definition contained in §211.002 does not encompass that provided
for in §211.015(a)(2). This is so because in §211.015(a)(2) the legislature modified the
phrase "adoption of zoning regulations" by placing the word "initial" before it. In other
words, by including the word "initial" in front of the phrase "adoption of zoning regulations,"
it was talking about a particular set of zoning regulations, not about zoning regulations in
general as contemplated in §211.002. And, as explained above, the particular set of
regulations to which it referred are the ones enacted when none previously existed or the
first ones enacted by cities as part of their initial zoning efforts. So, the definition in
§211.002 does not encompass the words in §211.015(a)(2); nor can it be used to expand
the power of referendum beyond the reach intended by the legislature in §211.015. 

 Nor do we accept the proposition that the Supreme Court in Quick v. City of Austin,
7 S.W.3d 109 (Tex. 1998) implicitly overruled San Pedro and Hancock in a way that now
allows the public to vote on whether any zoning ordinance should be repealed. Simply put,
Quick did not deal with §211.015(a)(2) of the Local Government Code but rather the
powers reserved to Austinites under the local city charter. Here, we deal with
§211.015(a)(2) and its directive as to when and how zoning regulations can be repealed
through referendum. And, since the legislature clearly restricted the power of referendum
to situations wherein a municipality is trying to zone for the first time, Canyon's city charter
must give way to it, Glass v. Smith, 244 S.W.2d at 649, as must San Pedro, Hancock and
Quick.

 Finally, turning to the facts before us, Goss and Fehr seek a public vote, via initiative
and referendum, on whether an amendment to a prior zoning ordinance should be allowed
to stand. They are not attempting to nullify Canyon's first attempt at zoning. Nor are they
trying to nullify all the zoning regulations which Canyon has enacted. Thus, the relief
sought exceeds that permitted by §211.015(a)(2) and (e). The legislature has exercised
its prerogative in the area, and we must abide by its directive especially when no one
questions the authority of the legislature to act. Consequently, the trial court abused its
discretion when it 1) concluded that Goss and Fehr have a probable right of recovery and
2) issued its temporary injunction.

 Accordingly, the order of the trial court denying Canyon's plea to the jurisdiction of
the trial court is affirmed. The order granting Fehr and Goss a temporary injunction is
reversed. We remand the cause to the trial court. 


 Brian Quinn

 Justice 






1. We say "initiated by the voters" because we do not address whether subsection (b) of §211.015
permits the governing body of a municipality to present, through referendum called at some date after their
initial adoption, the question of whether all the zoning laws should be repealed.