

## NUMBER 13-14-00364-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### IN RE PATRICIA ARNOLD, LAURA McLAUGHLIN, WILLIAM PRIDAY, AND KEVIN ROBBINS

### On Petition for Writ of Mandamus.

# O P I N I O N

### Before Chief Justice Valdez and Justices Perkes and Longoria
### Opinion by Chief Justice Valdez[1]

Relators, Patricia Arnold, Laura McLaughlin, William Priday, and Kevin Robbins, filed a petition for writ of mandamus in the above cause on July 2, 2014, seeking to compel the Ingleside City Council, City Manager, and City Secretary[2] to comply with the referendum process as delineated by the Ingleside City Charter regarding the repeal of

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

[2] The respondents and real parties in interest in this original proceeding include: Kimberly Drysdale, the Ingleside City Secretary, Jim Gray, the Ingleside City Manager, the City of Ingleside, and the Ingleside City Council, consisting of Mayor Pete Perkins and Council Members Ben Tucker, Willie Vaden, Cynthia Wilson, Elaine W. Kemp, and Paul Pierce. Kevin Robbins, a member of the City Council, appears herein in the capacity of a relator. *See* TEX. R. APP. P. 52.2.

four ordinances granting zoning amendments.[3]  Because we conclude that the initiative and referendum process does not apply to the repeal of individual zoning ordinances, we deny the petition for writ of mandamus.

## I. BACKGROUND

Relators seek referenda for the repeal of two sets of zoning amendments passed by the Ingleside City Council.  The first referendum request concerns the September 2013 application by Flint Hills Resources Corpus Christi, LLC, to change the zoning for 663.68 acres of land adjacent to State Roads 1069 and 2725, property known as "Live Oak Preserve," from zoning as a PUD-Planned Development Unit to an I ("Industrial") zone and a C-2 ("General Commercial") zone.  In October 2013, the City Council approved the request by the enactment of Ordinance 1087.

The second referendum request concerns the October 2013 applications by WMH Corpus 1, LLC to change the zoning for:  (1) 117.87 acres of the Rosa Teal Survey A-262, known as "Southside of Hwy 361," from the zoning classifications of R-1 ("Single Family Residential District") and L-1 ("Light Industrial District") to the classifications of C-1 ("Local Commercial District") and I ("Industrial District") with the inclusion of objectionable uses; (2) 152.62 acres of the Rosa Teal Survey A-262, known as "Northside of Hwy 361" from the classification of R-1 ("Single Family Residential District") to I ("Industrial District") with the inclusion of objectionable uses; and (3) 12.88 acres for (a)

---

[3] According to the website provided by the National Conference of State Legislatures, an "initiative" is generally defined as a process that enables citizens to bypass their state legislature by placing proposed statutes and, in some states, constitutional amendments on the ballot.  *See* http://www.ncsl.org/research/ elections-and-campaigns/initiative-referendum-and-recall-overview.aspx.  "Referendum" is a general term which refers to a measure that appears on the ballot.  *See id.*  There are two primary types of referenda: the legislative referendum, whereby the Legislature refers a measure to the voters for their approval, and the popular referendum, a measure that appears on the ballot as a result of a voter petition drive.  *See id.*

all or parts of Lots 1 through 8, Block 1, all of Lots 1 and 2, Block 2, and part of Block 3, Marina Heights Addition, (b) the most northerly 50' of Tract 10, Block A Caruthers Cove, San Patricio County, Texas, and (c) 10.00 acres, more or less, being a portion of Blocks C, D, and E Caruthers Cove, San Patricio County, Texas, known as 1625 Main, from the zoning classification of I ("Industrial District") to I ("Industrial District") with the inclusion of objectionable uses. In November 2013, the City Council approved the requests by the enactment of Ordinances 1089, 1090, and 1091.

After Ordinance 1087 passed, Ingleside residents Vicki Lynn Preston, Kevin Robbins, William Cedric Priday, Ricardo Trevino, Jr., and Mark Edward Mills filed an "Affidavit for Commencement of Proceedings; Petitioner's Committee" with the City. Thirteen days later, the petition committee presented a referendum petition to the City Secretary, Kimberly Drysdale. On November 26, 2013, the City Council held a special meeting, went into executive session, and decided that the referendum process "will be immediately cancelled and halted." The next day, the City Secretary sent letters to members of the Petitioners' Committee stating that the petition process was being halted. In December, five Ingleside residents, including some relators, attempted to deliver an affidavit for "commencement of proceedings." The City Manager refused to accept the notice. Despite relators' requests, the City has not instituted a referendum process for any of the four ordinances at issue in this original proceeding.

On February 20, 2014, relators filed suit against the City of Ingleside in cause number S-14-5207CV-C, currently pending in the 343rd District Court of San Patricio County, Texas. The trial court proceedings have been abated due to the pendency of this petition for writ of mandamus.

3

This original proceeding ensued on July 2, 2014. The Court has requested and received a response to the petition for writ of mandamus from the real parties in interest. By one issue, relators contend that the referendum provisions of the Ingleside City Charter apply to ordinances approving zoning amendments. In contrast, real parties assert that long-standing Texas case law, rules of statutory construction, and the plain wording of Chapter 211 of the Texas Local Government Code establish that the initiatory process does not apply to the adoption, amendment, or repeal of individual zoning ordinances. *See generally* TEX. LOC. GOV'T CODE ANN. §§ 211.001–.010 (West, Westlaw through 2013 3d C.S.).

Article VI of the Ingleside City Charter contains the relevant procedures for the initiative and referendum process:

A.     *Initiative*: The qualified voters of the City shall have power to propose ordinances to the City Council, and if the City Council fails to adopt an ordinance so proposed without any change in substance, to adopt or reject it at a city election, provided that such power shall not extend to the budget or capital program or any ordinance relating to appropriation of money, levy of taxes or salaries of City officers or employees. Such initiative power may be used to enact a new ordinance, or to repeal or to amend section of an existing ordinance.

B.     *Referendum*: The qualified voters of the City shall have power to require reconsideration by the City Council of any adopted ordinance and, if the City Council fails to repeal an ordinance so reconsidered, to approve or reject it at a City election, provided that such power shall not extend to the budget or capital program or any emergency ordinance relating to appropriation of money or levy of taxes.

INGLESIDE, TEX., CHARTER, art. VI, § 6.01 (Nov. 6, 1979, as amended February 13, 2001).

The Charter further provides that the referendum process can be invoked as follows:

Any five qualified voters may commence initiative or referendum proceedings by filing with the City Secretary an affidavit stating they will constitute the petitioners' committee and be responsible for circulating the petition and filing it in proper form, stating their names and residence

4

addresses and specifying the address to which all notices to the committee are to be sent, and setting out in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered.

*Id.* at § 6.02 (Nov. 6, 1979). The Charter further sets specific requirements applicable to the petitions. *Id.* at § 6.03 (Nov. 6, 1979, as amended Feb. 24, 2004). Once a referendum petition has been filed, the City Secretary must complete a certificate regarding the sufficiency of the petition. *Id.* at § 6.04(A) (Nov. 6, 1979, as amended May 4, 1996). If the petition is certified as sufficient, the certificate is presented to the City Council. *Id.* at § 6.04(B). Once the petition is filed with the City Secretary, the ordinance in issue "shall be suspended from taking effect," and the suspension only terminates when: (1) there is a final determination of insufficiency of the petition; (2) the petitioners' committee withdraws the petition; (3) the City Council repeals the ordinance; or (4) upon the certification of the election results by the election officials. *Id.* at § 6.05 (Nov. 6, 1979). When the petition has been determined sufficient, the City Council must promptly reconsider the referred ordinance by voting its repeal. *Id.* at § 6.06(A) (Nov. 6, 1979). If the Council does not repeal the referred ordinance within thirty days after the date the petition was finally determined sufficient, "it shall submit the . . . referred ordinance to the voters of the City." *Id.* If a majority votes against the referred ordinance, "it shall be considered repealed upon certification of the election results." *Id.* at § 6.07(B) (Nov. 6, 1979).

## II. MANDAMUS

Mandamus is appropriate when the relator demonstrates that the trial court clearly abused its discretion and the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148

S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one.  *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding).

A trial court clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts.  *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).  The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments.  *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding).

Pursuant to section 273.061 of the Texas Election Code, this Court has jurisdiction "to compel the performance of any duty imposed by law in connection with the holding of an election. . . ."  *See* TEX. ELEC. CODE ANN. § 273.061 (West, Westlaw through 2013 3d C.S.); *In re Peacock*, 421 S.W.3d 913, 916 (Tex. App.—Tyler 2014, orig. proceeding); *In re Lee*, 412 S.W.3d 23, 24 (Tex. App.—Austin 2013, orig. proceeding).  Election matters pertaining to the referendum and initiative process may be reviewed by mandamus.  *See, e.g., In re Bouse*, 324 S.W.3d 240, 241 (Tex. App.—Waco 2010, orig. proceeding [mand. denied]); *see also In re Porter*, 126 S.W.3d 708, 711 (Tex. App.—Dallas 2004, orig. proceeding) (holding that provisions in a city charter created ministerial duties enforceable by mandamus); *Duffy v. Branch*, 828 S.W.2d 211, 212–13 (Tex. App.—Dallas 1992, orig. proceeding) (same).

### III. STANDARD OF REVIEW

This original proceeding concerns the interpretation of the Ingleside City Charter and provisions of the Texas Local Government Code. Statutory construction is a question of law that we review de novo. *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). In construing a statute, the court's task is to give effect to the Legislature's expressed intent. *Atmos Energy Corp.*, 353 S.W.3d at 160; *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). In construing a statute, a court may consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) title (caption), preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (West, Westlaw through 2013 3d C.S.); *see Atmos Energy Corp.*, 353 S.W.3d at 160. In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. TEX. GOV'T CODE ANN. § 311.021 (West, Westlaw through 2013 3d C.S.); *see Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010).

We construe a city charter provision according to the rules governing the interpretation of statutes generally. *City of Houston v. Todd*, 41 S.W.3d 289, 297 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Rossano v. Townsend*, 9 S.W.3d 357, 363

7

(Tex. App.—Houston [14th Dist.] 1999, no pet.); *Willman v. City of Corsicana*, 213 S.W.2d 155, 158 (Tex. Civ. App.—Waco 1948), *aff'd*, 216 S.W.2d 175 (1949).

## IV. ANALYSIS

Relators assert that the Texas Constitution, which recognizes that "political power resides in the people," and relatively recent changes to the Texas Local Government Code argue in favor of the right to referendum in zoning matters. According to relators:

> There are valid policy and political (in the good sense) reasons for allowing an additional layer of citizen involvement in zoning decisions. Initiative and referendum can play a valuable role in land use law. They tend to act as an educational force, directing popular attention on specific issues. The controversies involved provoke vigorous debate without the need for expensive political campaigns. . . . *The Initiative and Referendum's Use in Zoning*, 64 CAL. L. REV. at 77. A reading of the Texas zoning statutes that would prohibit referendum on issues that the public cares about deeply is not clearly required and should not be allowed to silence the voice of popular will.

Relators concede that whether a zoning determination can be the subject of a referendum is a much-disputed issue in the United States with "various jurisdictions coming to different conclusions." Relators argue that the Texas Supreme Court and this Court have not yet addressed this issue; and while some courts of appeals have determined that referendum is not available to address zoning determinations, those decisions are questionable.[4] In contrast, the real parties in interest contend that established law provides that the initiative and referendum process is not applicable to changes in existing zoning.

---

[4] Relators further contend that the real parties in interest may not decline to hold an election based on a belief that the proposed legislation would violate the law if adopted, and must instead defer to a court ruling regarding the alleged illegality. *See, e.g., Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980); *In re Roof*, 130 S.W.3d 414, 416–17 (Tex. App.—Houston [14th Dist.] 2004, orig. proceeding). However, this doctrine has no application to this case because it concerns the real parties' refusal to hold an election on grounds that the election itself, not the proposed legislation, would violate the law.

The initiative process affords direct popular participation in lawmaking. *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980). "The system has its historical roots in the people's dissatisfaction with officialdom's refusal to enact laws." *Id.* (citing 1 *Bryce, The American Commonwealth* (1st ed. 1888)). It is an implementation of the basic principle of the Texas Constitution that "[a]ll political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit." TEX. CONST. art. I, § 2; *see Coalson*, 610 S.W.2d at 747. Citizens who exercise their rights under initiative provisions "become in fact the legislative branch of the municipal government." *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951); *see Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999). The power of initiative and referendum "is the exercise by the people of a power reserved to them, and not the exercise of a right granted." *Taxpayer's Ass'n of Harris Cnty. v. City of Houston*, 129 Tex. 627, 105 S.W.2d 655, 657 (1937); *see also Coalson*, 610 S.W.2d at 747; *Glass*, 244 S.W.2d at 649; *City of Canyon v. Fehr*, 121 S.W.3d 899, 903 (Tex. App.—Amarillo 2003, no pet.).

Nevertheless, the initiative process may be limited by general law. TEX. CONST. art. XI, § 5 ("no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *see Glass*, 244 S.W.2d at 649; *see also In re Bouse*, 324 S.W.3d at 243 (stating that the local government code has withdrawn the issue of incorporation from the initiatory process). More specifically, the initiative process can be withdrawn where the authority to act is expressly conferred upon a municipal governing body exclusively, or there is some preliminary duty which has been made a prerequisite to the exercise of legislative power by statute or charter which is impossible in an initiative

9

proceeding.  *See Glass*, 244 S.W.2d at 649.   Moreover, the initiative and referendum power may also be expressly or impliedly limited by a city charter.  *Quick v. City of Austin*, 7 S.W.3d 109, 124 (Tex. 1998); *Glass*, 244 S.W.2d at 648–49.  Charter provisions are to be liberally construed in favor of the power of initiative and referendum, so a limitation will not be implied unless the provisions of the charter are clear and compelling.  *Quick*, 7 S.W.3d at 124; *Glass*, 244 S.W.2d at 649.

Texas case authority historically prohibited the use of initiative and referendum with regard to zoning.  *See, e.g., San Pedro N., Ltd. v. City of San Antonio*, 562 S.W.2d 260, 262–63 (Tex. Civ. App.—San Antonio 1978, writ ref'd n. r. e.); *Hancock v. Rouse*, 437 S.W.2d 1, 3–4 (Tex. Civ. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.).[5]  Relators contend that the 1993 amendments to section 211.015 of the Texas Local Government Code give voters the right to repeal a zoning amendment.  This section provides:

> Notwithstanding other requirements of this subchapter, the voters of a home-rule municipality may repeal the municipality's zoning regulations adopted under this subchapter by either:
>
> (1)    a charter election conducted under law; or
>
> (2)    on the initial adoption of zoning regulations by a municipality, the use of any referendum process that is authorized under the charter of the municipality for public protest of the adoption of an ordinance.

TEX. LOCAL GOV. CODE ANN. § 211.015(a) (West, Westlaw through 2013 3d C.S.). Subsection (e) of this section further provides that:

---

[5] Similarly, Texas law prohibits the use of initiative and referendum with regard to annexation ordinances.  *See Vara v. City of Houston*, 583 S.W.2d 935, 938 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.); *City of Hitchcock v. Longmire*, 572 S.W.2d 122, 127 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.); *see also Save our Aquifer v. City of San Antonio*, 237 F.Supp.2d 721, 729 (W.D.Tex. 2002) ("Annexation issues are not subject to direct democracy voting through referendum, but rather are reserved to representative democracy."); *Ryan Servs., Inc. v. Spenrath*, No. 13-08-00105-CV, 2008 WL 3971667, at *5 (Tex. App.—Corpus Christi Aug. 28, 2008, pet. denied) (mem. op.);  *In re Ryan*, No. 13-08-00179-CV, 2008 WL 1822442, at *3 (Tex. App.—Corpus Christi Apr. 18, 2008, orig. proceeding [mand. denied]) (mem. op.).

> The provisions of this section may only be utilized for the repeal of a municipality's zoning regulations in their entirety or for determinations of whether a municipality should initially adopt zoning regulations, except the governing body of a municipality may amend, modify, or repeal a zoning ordinance adopted, approved, or ratified at an election conducted pursuant to this section.

*Id.* at § 211.015(e). According to the code, the phrase "the adoption of a zoning regulation or a zoning district boundary includes the amendment, repeal, or other change of a regulation or boundary." *Id.* at § 211.002 (West, Westlaw through 2013 3d C.S.).

The Amarillo Court of Appeals has rejected the argument that relators make here and has specifically held that this legislation authorizes a referendum vote on the "initial" adoption of zoning regulations but not the amendment of individual zoning regulations. *City of Canyon*, 121 S.W.3d at 906. Specifically, the court held that the legislature intends for section 211.015 to be utilized only when the municipality attempts to create and impose, for the first time, upon its citizenry a body of zoning ordinances when or where none previously existed. *Id.* at 904–06. The court concluded that the legislative action (1) modified *Hancock* and *San Pedro* to the extent they indicated that initiative and referendum could not be used to repeal zoning ordinances, and (2) restricted the use of initiative and referendum to the time and to the regulations described in the statute. *Id.* at 905. The court held that referendum, initiated by the voters, could neither be used to vitiate such ordinances piecemeal nor could it be used after the first ordinances survived with or without attack. *Id.* at 905–06.

Relators contend that this decision fails to recognize that the statutory definition of zoning regulations includes an amendment to the regulations. *See* TEX. LOCAL GOV. CODE ANN. § 211.002. According to the statutory definition provided by the local government code, the phrase "adoption of a zoning regulation" also includes the "amendment, repeal,

11

or other change of a regulation." *See id.* However, the Amarillo court considered and explicitly rejected this contention on grounds that in section 211.015(a)(2), the legislature modified the phrase "adoption of zoning regulations" by placing the word "initial" before it. *See City of Canyon*, 121 S.W.3d at 906. In other words, by including the word "initial" in front of the phrase "adoption of zoning regulations," it was talking about a particular set of zoning regulations, not about zoning regulations in general as contemplated in section 211.002. *See id.* And, as explained above, the particular set of regulations to which it referred are the ones enacted when none previously existed or the first ones enacted by cities as part of their initial zoning efforts. *Id.*

We agree with the Amarillo Court of Appeals that the amendments to the local government code do not allow the initiative and referenda process to apply to individual zoning amendments; thus, we reject relators' invitation to conclude otherwise. The statute allows the use of the referendum process for voters to repeal a city's zoning regulations in their entirety or to determine whether the city should initially adopt zoning regulations, but does not allow it for the amendment of individual zoning determinations.

Relators have also briefed and asserted significant policy reasons why the initiative and referenda process should apply and have invited us to depart from the determinations of the other courts that have considered this issue. For instance, relators contend that older law prohibiting referenda on zoning decisions was based on the reasoning that the notice and hearing provisions in statutes governing zoning determinations were inconsistent with referendum procedures, which typically did not provide for notice and hearing, so the Legislature had implicitly removed zoning decisions from the scope of initiative or referendum. *See, e.g., San Pedro N., Ltd.*, 562 S.W.2d at 262; *Hancock*, 437

12

S.W.2d at 4.  Relators thus contend that this argument has no application in this case because a referendum under the City Charter can only result after public notice and hearings.  According to relators, "[r]eferendum would merely allow another layer of oversight and popular involvement in zoning changes, without eliminating any procedures, including procedures providing for citizen involvement[] that are required by zoning statutes."

We agree with relators that the instant case does not present concerns regarding the failure to provide notice and public hearing, however, the cases prohibiting the use of initiative and referenda are supported by other rationales.  For instance, the court in *San Pedro N., Ltd.* also noted that its conclusion that zoning ordinances are not subject to the initiative and referendum process was based on the necessity for continuity and expertise in zoning, rather than on the statutory requirements for notice and hearing.  *See San Pedro N., Ltd.*, 562 S.W.2d at 262.  Further, as stated by the Houston Court of Appeals:

> The preparation of a comprehensive Zoning Ordinance, which would meet the objectives set out in the statute, requires careful study, the accumulation of masses of detailed information concerning land use within the city, and is a matter concerning which the professional advice of one experienced in city planning would be most helpful. It would be very difficult to present the information necessary to evaluate a proposed Zoning Ordinance to the voters in an intelligible manner.

*Hancock*, 437 S.W.2d at 4.

The question regarding whether initiatives and referenda should apply to the zoning process has been the subject of numerous scholarly articles and has been the source of much public debate.  *See, e.g., Nicolas M. Kublicki, Land Use by, for, and of the People: Problems with the Application of Initiatives and Referenda to the Zoning Process*, 19 PEPP. L. REV. 1 (1992); available at:  http://digitalcommons.pepperdine.edu/

13

plr/vol19/iss1/4; *Craig N. Oren, The Initiative and Referendum's Use in Zoning*, 64 CAL. L. REV. 74 (1976); available at: http://scholarship.law.berkeley.edu/californialawreview/vol64/iss1/3.  Existing Texas law holds that the referendum process is not available to challenge individual zoning ordinances.  In the absence of further guidance from the Texas Supreme Court or the Legislature, and after due consideration, we decline to overrule Texas's long-established common law and the standards for statutory interpretation to hold otherwise.

## V. CONCLUSION

In this case, relators seek a public vote, via initiative and referendum, on whether amendments to prior zoning ordinances should be allowed to stand.  The Court, having examined and fully considered the petition for writ of mandamus and the response thereto, is of the opinion that relators have not met their burden to show themselves entitled to the relief sought.  *See City of Canyon*, 121 S.W.3d at 906; *San Pedro N., Ltd.*, 562 S.W.2d at 262–63; *Hancock*, 437 S.W.2d at 3–4.  Specifically, relators have not established that respondents have a ministerial duty under the Ingleside City Charter and existing law to apply the initiative and referendum process to zoning reclassifications.  Accordingly, the petition for writ of mandamus is DENIED.  *See* TEX. R. APP. P. 52.8(a).

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
29th day of July, 2014.

14